Ross *v.* Hicks.

---

## Ross *vs.* Hicks.

## Hicks *vs.* Ross.

A motion to set off judgments obtained in a justice's court, transcripts of one or both of which have been filed with the county clerk, will not be entertained in this court; the county court having full power in such cases.

A motion to set off a judgment must be made in the court where the judgment against the moving party was obtained.

A constable, after he has returned an execution satisfied by sale, can not annul that return, by a supplementary indorsement on the execution that the defendant has sued and recovered for the property

*v. p. vii*

Motion by Ross to set off two judgments against each other, originally recovered in a justice's court. Ross had a judgment against Hicks, on which a horse had been sold. Hicks sued Ross for the horse and recovered, on the ground that it was

exempt from levy and sale. The following is the substance of the affidavits.

On the part of Ross, two of the jurors in *Hicks* v. *Ross* swore they gave a verdict for the value of the horse. That it appeared the horse was part of Hicks' team; and that the officer had tendered the surplus, after paying execution, which Hicks had refused. One Vaughn swore he was constable, and in October, 1850, had an execution issued by Howden a justice, in *Ross* v. *Hicks*, for $34,46, and Hicks turned out a stud horse, twenty sheep and a cow. That Hicks had 3 horses then. That he sold the horse for $17,90 more than enough to pay Ross, which sum Hicks would not take, and he left it with one Underhill, giving information to Hicks that it was there to his order. That Hicks sued Ross and recovered the value of the horse.

Underhill swore the balance, $17,90, was deposited with him by the constable. Afterwards Hicks claimed it and he paid it to him, not knowing but he had a right to it.

The attorney of Ross swore that the transcript in *Ross* v. *Hicks* was filed February 6, 1851, in the Clinton county clerk's office. That after the sale Hicks recovered of Ross $56,38 for the horse, beside costs, a transcript of which was filed 25th January, 1851, and execution had been issued. That after the verdict, Hicks took the money from Underhill. That he demanded of Hicks that he should apply the $17,90 on the judgment in *Hicks* v. *Ross*, and offered to pay him the balance. That again in July, 1851, he asked Hicks to apply the surplus money on his judgment and he would pay the balance. Hicks replied, " show me the money and I will answer."

On the part of Hicks, Vaughn swore that he returned the execution to the justice, satisfied, after the sale and before Hicks sued; and afterwards made a supplementary return of the facts thereon.

Hicks swore that he turned out the horse, cow and sheep on condition the constable would sell them before the door of Ross. That the judgment was unjust, and he did not know as the horse was exempt when he turned it out. That he wanted the constable to sell the cow, and he would pay the balance, and on

the day of sale he forbade the sale. That the horse sold for $55,00, after which he prosecuted Ross and recovered for the horse, besides costs. That he received the money of Underhill by advice of counsel and as a matter of prudence. That Ross's attorney never tendered the balance as he stated, but pretended he would. That the judgment was satisfied by the sale.

*F. A. Hubbell,* for the motion.

*P. G. Ellsworth,* contra.

HAND J. There is no doubt as to the equity in this case. Hicks turned out the horse upon which the constable made the levy. He could not afterwards take the horse from the officer, by pretending he was mistaken as to the law. But that is not important now, for he sued Ross notwithstanding, and got judgment for about $60, which is conclusive as to the right. He then immediately went to the depositary and got the overplus of the money before tendered to him, and which was raised by the sale of the same property. This he says he did by the advice of counsel and " as a matter of prudence ;" and now leaving his debt unpaid, is endeavoring to enforce the whole of this judgment. After the sale, and return of the execution by the constable satisfied, he could not, because of the recovery for the property by Hicks, make a supplementary return of that fact, that would revive the judgment. Nor could the justice, it seems, make the amendment. (*Piper* v. *Elwood,* 4 *Denio,* 165.) And I am inclined to think Ross could not file a transcript while the judgment was *prima facie* satisfied. If the judgment in such case can be made a lien upon land at all, it must be by filing a transcript of the judgment, execution and return, and then procuring the county court to amend the return, &c. But I have no doubt that the proper court, notwithstanding this return, could and should set off these judgments, and also apply the overplus money. In truth the judgment against Hicks is not paid, (*Piper* v. *Elwood, supra,*) and these applications are to the discretion and equitable jurisdiction of the

court; and where the facts are admitted and the court has jurisdiction, justice should be done if it can be, without violating any plain rule of practice. Hicks admits that he turned out the property that was sold, that he afterwards recovered for the same and then received the overplus money There is no dispute about facts; so there is no intricacy or complexity, and the case does not come within the principle of *Harris* v. *Palmer,* (5 *Barb.* 105.)

But there is an insuperable difficulty in the way of the motion. It has long been the practice to set off one judgment against another, in a proper case. And this, where they are in different courts, if the parties are interested in the respective judgments in the same right, and the judgment is conclusive, and the rights of the parties are not doubtful, complicated or intricate. (*Barb. on Set-off,* 36. 1 *Burr. Pr.* 281. *Mont. on Set-off,* 67, and notes. *Schermerhorn* v. *Schermerhorn,* 3 *Caines,* 190. *Brewerton* v. *Harris,* 1 *John.* 144. *Bristowe* v. *Needham,* 7 *M. & G.* 648. *Bridges* v. *Smith,* 8 *Bing.* 29.) And this rule extends to a judgment in a justice's court. (*Ewen* v. *Terry,* 8 *Cowen,* 126. *Kimball* v. *Munger,* 2 *Hill,* 364. *Story* v. *Patten,* 3 *Wend.* 331. *Harris* v. *Palmer, supra.*) But the motion must be made in the court where the judgment against the moving party was obtained. (*Cooke* v. *Smith,* 7 *Hill,* 186. *Brewerton* v. *Harris,* 1 *John.* 144. *People* v. *New-York C. P.* 13 *Wend.* 652. *Dunken* v. *Vandenburgh,* 1 *Paige,* 624.) Hicks having filed a transcript with the clerk of the county of Clinton, the Clinton county court has full power, whether the judgment in favor of Ross be considered in that court or not. (2 *R. S.* 254, § 166. *Code of* 1849, §§ 30, 63, 64.) If the judgment to be enforced against the moving party be in another court, an order in his favor could not be enforced except by attachment. The ground of interference in these cases is "the general jurisdiction of the court over the suitors in it." (*Lord Kenyon in Mitchell* v. *Oldfield,* 4 *T. R.* 123.) Neither of the parties in this case are suitors in this court; nor are either of the judgments in this court. And they can not be set off here; certainly not on motion. Mr. Justice

---

Welles, in *Harris* v. *Palmer*, did not observe upon this rule, but that was not necessary, as he denied the motion on other grounds.

Of course it becomes unnecessary to decide whether affidavits of jurors can be used to explain the principles upon which they find a verdict. (*Graham on N. T.* 111 *et seq.*)

The motion must be denied with costs, but without prejudice to the right of Ross to move in the Clinton county court.

[CLINTON SPECIAL TERM, July 14, 1851. *Hand* Justice.]