MALLORY *vs.* NORTON and SCOTT,

Where a plaintiff is attempting to enforce, by execution, the collection of a judgment already satisfied, and the defendant cannot obtain relief by a judge's order to stay proceedings, or by motion, inasmuch as the judgment is in a justice's court and the county court has not obtained jurisdiction by the filing of a transcript, and the defendant, if he is compelled to pay the amount of the execution, can have no redress by action against the plaintiff, by reason of the insolvency of the latter, nor against the justice or constable, the execution being fair and regular upon its face, and issued upon a judgment regularly obtained, he may maintain an action against the plaintiff in the judgment, to have the execution set aside and the judgment decreed to be satisfied and extinguished, and for an injunction to restrain all proceedings thereon.

The remedy, in such a case, being in the nature of a bill in equity, the supreme court has jurisdiction, although the amount involved is less than $100.

After judgment, a recovery in an action for a tort becomes a *debt,* and the amount

Mallory *v.* Norton.

may bo paid to the sheriff, by any pe[...]indebted to the judgment debtor, under and by virtue of section 293 of th[...]code.

A claim for the recovery of the proceeds of exempt property, wrongfully seized and sold upon execution, will be converted into a debt, by the recovery of a judgment for the value.

A defendant, whose exempt property is seized upon execution may protect his rights by bringing an action in the nature of replevin, for the delivery of his property, and thus have it restored. But if he chooses to bring an action to recover the value, and obtains a judgment, which *becomes a debt*, he takes the risk of subjecting himself to the provisions of sec. 293 of the code.

THIS was an appeal by the plaintiff from a judgment entered at a special term. The complaint alleged that on the 31st day of March, 1853, the defendant Titus Norton commenced an action against the plaintiff before John Gifford, Esq. then and still a justice of the peace in the town of Greenfield, in the county of Saratoga, by summons returnable before said justice, on the 6th day of April thereafter; which suit was brought to recover damages for the alleged wrongful taking by the plaintiff, from the said Norton, of a certain horse, and the said Norton in said suit claimed to recover $100 damages; that said summons was duly served upon the plaintiff, who appeared in said suit, and such proceedings were had therein that afterwards, to wit, on the 26th day of April, 1853, a judgment was rendered in said action by said justice, in favor of the defendant Norton and against the plaintiff, for $77.89 damages and costs; that prior to the recovery of said judgment in favor of Norton against the plaintiff, to wit, on the 15th day of January, 1852, a judgment was recovered against said Norton in the supreme court, in favor of Jacob Van Demark and Helen Van Demark, for $153.38 damages and costs, which said last mentioned judgment was duly docketed in the office of the clerk of Saratoga county, on that day; that at the time of the rendition of said judgment first above mentioned, said last mentioned judgment was still unsatisfied to the amount of $75 and upwards; that an execution against Norton was issued on said last mentioned judgment, to Henry H. Hathorn, then and still sheriff of the county of Saratoga, on the 27th day of April, 1853, to collect the amount then remaining due and unpaid thereon, which then exceeded the sum

of $75; that on said 27th day of April, 1853, at Saratoga Springs in said county, while said last mentioned execution remained in the hands of said sheriff, and unsatisfied as aforesaid, and before the issuing of any execution by said justice on the judgment in favor of the defendant Norton against the plaintiff, the plaintiff paid to the said sheriff the sum of $75 to apply on said judgment in favor of Jacob and Helen Van Demark, and the sheriff executed and delivered to the plaintiff a receipt therefor, pursuant to section 293 of the code of procedure, in words following:

"Supreme court. Jacob Van Demark and Helen Van Demark against Titus Norton. Received of Darling P. Mallory seventy-five dollars upon an execution in my hands against the above named defendant, in favor of the above named plaintiffs, and the said Mallory is discharged from any indebtedness to said Titus Norton to the amount of seventy-five dollars, by virtue of the statute in such case made. Saratoga Springs, April 27, 1853.        H. H. HATHORN, sheriff Saratoga county."

And the plaintiff further alleged that at the time of said payment to the sheriff by him, he was not indebted to the defendant Norton in any sum or for any other cause soever except the judgment first before mentioned; that on the 27th day of April, 1853, notice was given to Norton and the justice of the payment so made to the sheriff as aforesaid; that afterwards, to wit, on the 7th day of July, 1853, the said justice, on the application of Norton, issued an execution on said judgment against the plaintiff for the whole amount thereof, to John Scott the defendant, then and still a constable of Greenfield, in said county; that afterwards, on or about the 20th day of July, 1853, the plaintiff paid to said constable the balance due thereon, after deducting the sum paid to the sheriff as aforesaid and specified in said receipt, together with the fees of the constable on said execution; that afterwards, on the 21st day of December, 1853, the said justice, on the application of Norton, issued another execution on said judgment against the body of the plaintiff, to the defendant Scott, requiring him to collect the sum of $75 thereon, and in default thereof commanding said constable to take the body

of the plaintiff and him commit to the common jail in and for the county of Saratoga; that both of the defendants refused to recognize said receipt of the sheriff as a payment on said judgment, and that Norton insisted upon disregarding said payment to the sheriff and had directed the constable to enforce the collection of said execution, and Scott threatened that unless the plaintiff paid said sum of $75 and his fees thereon, he would arrest the plaintiff by virtue thereof and him commit to the common jail of the county of Saratoga. And the plaintiff alleged that said judgment in favor of Norton had been entirely paid and satisfied since its rendition as before stated, and that the issuing of said execution for the sum of $75 was erroneous and wrongful; that the defendant Norton was utterly insolvent, and that in case the plaintiff was compelled to pay said sum of $75 again, the same would be lost, as the same could not be collected of said Norton. Wherefore the plaintiff demanded judgment that the said execution so issued to Scott on the 21st day of December, 1853, on said judgment by the justice, against the body of the plaintiff, be set aside, and that said judgment be decreed satisfied and extinguished, and that said defendants be each perpetually enjoined from enforcing the collection of said execution; and that in the mean time and until further ordered in the premises, the defendant Scott might, by order of this court, be restrained from enforcing said execution, and from arresting or attempting to arrest the body of the plaintiff thereon, and from all proceedings by him on said execution, &c.

The defendant Titus Norton, by his answer, denied that at the time of the rendition of the judgment in the justice's court in his favor, mentioned in the complaint, the judgment in the supreme court, also mentioned in said complaint, was unsatisfied to the amount of $75 and upwards, or to any amount whatever, and he denied that on the 27th day of April, 1853, or at any other time, the plaintiff paid to Henry H. Hathorn, sheriff of the county of Saratoga, the sum of $75, or any other sum to apply on the said judgment in the supreme court, which was in favor of Jacob and Helen Van Demark; and he denied that the said judgment in his favor had been paid or satisfied; and he denied

that the issuing of the execution thereon by said justice for the sum of $75, was erroneous and wrongful.  And for a second and further answer he alleged that on the 18th day of February, 1852, the plaintiff was, ever since had been, and still was one of the general deputies of the sheriff of Saratoga county; that on or about the 19th day of February, 1852, an execution was issued upon the judgment recovered on the 15th day of January, 1852, in the supreme court, in favor of Jacob and Helen Van Demark, against this defendant, which judgment was particularly referred to, in said complaint, and was on that day delivered to the plaintiff as such deputy sheriff; which execution, after reciting that a judgment had been recovered in the supreme court, in favor of Jacob Van Demark and Helen Van Demark, against Titus Norton, for $153.38, damages and costs, and that the same had been docketed in the clerk's office of Saratoga county, and that the sum of $153.38 was actually due thereon, commanded and required said sheriff to satisfy the said judgment out of the personal property of said debtor, or if sufficient personal property could not be found, out of the real property belonging to him on the 15th day of January, 1852, or at any time thereafter, and had indorsed thereon a direction to levy $153.38 with interest from the 15th day of January, 1852, which judgment referred to in said execution, was the same identical judgment particularly described in said complaint; that by virtue of said execution, the plaintiff levied upon, seized and took certain personal property; that afterwards, and on or about the 3d day of March, 1852, the plaintiff, by virtue of said execution, sold the said personal property, so levied upon by him, for a sum of money more than sufficient to pay, satisfy and discharge the said execution, and the judgment on which it issued, together with all sheriff fees thereon ; and that said execution was then and there declared by the plaintiff to be fully satisfied ; and the defendant alleged that thereby the said execution and judgment were and are fully satisfied and paid.  And for a third answer to the complaint, and in defense of this action the defendant alleged, that upon the execution and sale in the *second* answer mentioned, the horse in the complaint mentioned and referred

Mallory *v.* Norton.

to, was struck off and sold by the plaintiff as such deputy sheriff, to one Gerardus Van Demark, for a sum of money; that said horse was delivered by the plaintiff to the said purchaser and was driven away by him; that this defendant forbid the sale of the said horse; that afterwards, on the 31st day of March, 1853, this defendant commenced an action against the plaintiff, to recover the value of said horse, before John Gifford, Esq. a justice of the peace in the said town of Greenfield, by summons returnable before the said justice at his office in said town, on the 6th day of April, 1853; that said summons was duly served upon the plaintiff, who appeared in said suit; that on the return day, this defendant also appeared in said suit, before said justice, and complained against the said Mallory for wrongfully taking and converting to his own use the said horse, the property of the defendant exempt by law from levy and sale under execution, to his damage of $100; that such proceedings were thereupon had in said action in the said justice's court that afterwards, to wit, on the 26th day of April, 1853, a judgment was duly rendered and given in said action by said justice, in favor of the defendant Norton, and against the plaintiff Mallory, for $75 damages (the value of said horse,) and $2.89 costs, amounting in all to $77.89; that in said action before the justice, this defendant Norton recovered the value of said horse on the ground that the same was exempt by law from levy and sale under execution; that the said judgment rendered by said justice still remained in full force and effect, unsatisfied, not reversed or annulled, set aside or paid, except only as to the sum of $2.89, which sum of $2.89 was all that has ever been paid thereon; that afterwards, to wit, on the 27th day of April, 1853, the said Jacob Van Demark and Helen Van Demark, by their attorneys, Lester & Bartlett, without order of the court, issued and delivered to H. H. Hathorn, sheriff of the county of Saratoga, another execution upon their said judgment against the defendant, requiring him to levy and collect of this defendant $74.32, with interest from March 3d, 1852, to satisfy said judgment, which last mentioned execution was specified and referred to in said complaint; that at the time of so delivering the execution last mentioned to the sheriff,

Charles S. Lester, one of the attorneys for the said Jacob and Helen Van Demark, and who was also one of the attorneys for said Mallory in the action before the justice, and who is now one of the plaintiff's attorneys in this action, and who delivered said execution to said sheriff, did, on the 27th day of April, 1853, pay or hand over to the said sheriff the sum of $75, pretending to said sheriff that he paid it for the plaintiff Mallory, as the debtor of this defendant, on said execution, and requesting the receipt set forth in the said complaint, to be given; that thereupon the sheriff signed and delivered to Lester said receipt, and at the same time paid or handed back to said Lester, said sum of $75, being the same identical money which Lester had a few moments before handed to said sheriff, and the said sheriff thereupon returned said execution satisfied. And the defendant expressly charged the fact to be that the $75 was in fact paid to said sheriff by or on behalf of the said Jacob and Helen Van Demark, and not by the plaintiff Mallory, and was not his money, and that said pretended payment was not real, but colorable only.

The action being at issue upon the pleadings, was brought to trial at the Saratoga circuit in June, 1854, before Mr. Justice HAND, without a jury. It was proved that on the 31st of March, 1853, the defendant Norton commenced an action against the plaintiff before John G. Gifford, Esq. then a justice of the peace in the county of Saratoga, to recover damages for the alleged wrongful taking by the plaintiff from said Norton, of a certain horse, and the said Norton in said suit claimed to recover $100 damages; that such proceedings were had in said suit that afterwards, on the 26th day of April, 1853, a judgment was rendered in said action by said justice in favor of the defendant Norton against the plaintiff, for $77.89 damages and costs for the value of the said horse, on the ground that said horse was exempt property, and not subject to levy and sale under execution; that prior to the recovery of said judgment, to wit, on the 15th day of January, 1852, a judgment was duly recovered against said Norton, in the supreme court of the state of New York, in favor of Jacob Van Demark and Helen Van Demark, for $153.38

damages and costs, which was docketed in the office of the clerk of Saratoga county, on the said 15th day of January, 1852, and an execution was issued thereon to the sheriff of the county of Saratoga, on the 19th day of February, 1852, and came to the hands of the plaintiff, who was then a deputy of W. T. Seymour, Esq. said sheriff. Mallory, by virtue thereof, levied upon and sold the property of the defendant Norton, sufficient to pay the execution, which he then declared was satisfied; but the property so sold included the horse for which Norton afterwards recovered against Mallory in the suit before Gifford the justice, as above mentioned. That execution in favor of the Van Demarks against Norton was filed with the clerk of the county of Saratoga, on the 27th day of April, 1853, on which was a return by the sheriff, signed by Mallory as his deputy, that $82.42 had been made thereon, and *nulla bona* for the remainder; that on the 27th day of April, 1853, and after the former execution had been returned and filed with the clerk as aforesaid, another execution on said judgment in favor of the Van Demarks against Norton, was issued to the sheriff of Saratoga county and placed in the hands of H. H. Hathorn, Esq. then said sheriff, with a direction indorsed thereon, to levy $74.32, (which was the amount for which said horse was sold on the first execution,) and interest from the 2d of March, 1852. On the same day Mallory paid to Hathorn, the sheriff, $75 to apply on the execution in favor of the Van Demarks against Norton. This payment was made by the advice and direction of his counsel, who was also one of the attorneys of the Van Demarks. No execution was issued on the judgment Norton had obtained against Mallory before Gifford, until the July following. The plaintiff claimed to pay this $75 to the sheriff under section 293 of the code, and as a debtor of Norton, and the sheriff gave him a receipt therefor.

At the time of said payment to the sheriff by the plaintiff, the latter was not indebted to the defendant Norton in any other sum or for any cause soever, except the judgment first before mentioned; on the same 27th day of April, 1853, notice was given to Norton and the justice of said payment, so made to said sheriff; afterwards, on the 7th day of July, 1853, the said

Mallory v. Norton.

justice, on the application of Norton, issued an execution on said judgment against the plaintiff, for the whole amount thereof, to John Scott, the other defendant, who was then and still is a constable of the town of Greenfield in the county of Saratoga; that afterwards on the 20th day of July, 1853, the plaintiff in this action paid to said constable the balance due on said judgment against him, to said Scott, deducting therefrom the sum paid to said sheriff and specified in said receipt, together with the fees of said constable on the execution; afterwards, on the 21st day of December, 1853, the justice, on the application of Norton, issued another execution on said judgment against the body of the plaintiff, to the defendant Scott as such constable, requiring him to collect the sum of $75 thereon, and in default thereof, commanding said constable to take the body of the plaintiff, and him commit to the common jail in and for the county of Saratoga; that both defendants refused to recognize said receipt of the sheriff as payment on said judgment; and Norton directed the constable to enforce the collection of said execution, and Scott threatened that unless the plaintiff paid the said sum of $75 and his fees on said execution, he would arrest the plaintiff by virtue thereof, and him commit to the common jail in the county of Saratoga, and that the defendant Norton was, at the time of the issuing of said execution, and ever since has been and still is utterly insolvent. Upon these facts the judge decided that they were not sufficient to sustain the action, and thereupon directed a nonsuit and that the complaint be dismissed out of this court, but without prejudice to the rights of the plaintiff to insist in any after suit, &c. that the judgment in favor of Norton against Mallory was paid and satisfied; to which decision and direction the plaintiff excepted, and the judge gave the plaintiff leave to except, and that the said exceptions be heard in the first instance at general term.

A. *Pond* and C. S. *Lester*, for the plaintiff.

H. W. *Merrill* and W. *McKindley*, for the defendants.

Mallory *v.* Norton.

C. L. ALLEN, P. J.    I cannot discover where the remedy of the plaintiff in the present action is, unless it lies in the course which he has pursued.    The learned justice who tried the cause came to the conclusion that the judgment upon which the execution was issued was satisfied, and that the execution had no force.    But he remarks that the plaintiff has mistaken his remedy, which is perfect at law.    The case of *Lansing* v. *Eddy*, (1 *John. Ch. R.* 49,) cited in support of this remark, decides that where perfect relief may be obtained at law, equity will not interfere ; and such is the ruling in other cases. (*See* 4 *John.* 191 ; 17 *Wend.* 631.)    In the case of *The Bank of the United States* v. *Jenkins & others*, (18 *John.* 305,) the court said that the proper course, where a *ca. sa.* was improperly issued, was by motion, on affidavit.    And in *Brooks* v. *Hunt*, (17 *John.* 484,) which was a motion to discharge from an arrest on a *ca. sa.* and for an *audita querela*, after the discharge of the debtor from his debts, under the insolvent act, the court granted the *audita querela*, but denied the discharge, remarking that the parties might take issue on an *audita querela*, and that it was not uncommon, where the case was difficult or dubious, to deny the motion for a discharge, and put the party to his *audita querela*.    Where the party had had an opportunity of pleading his discharge in an action of debt brought on the judgment, after it was recovered, the court said he should have availed himself of his plea, and having neglected to do so, relief was denied either by motion or *audita querela*.    But where evidence was not discovered until after trial in the common pleas, which court had no power to grant a new trial, and no other remedy could be found, a court of equity interfered. (*Floyd* v. *Jayne*, 6 *John. Ch. R.* 479.    And see *Foster* v. *Wood*, 6 *John. Ch. R.* 90.    1 *Barb. Ch. R.* 167.)    In the present case the plaintiff could have no relief by motion.    The judgment upon which the execution against his body issued was rendered in a justice's court, and no transcript having been filed in the county clerk's office, the county court had no jurisdiction, and could entertain no motion for his discharge, if he had been imprisoned on the execution. (17 *Wend.* 631.    7 *Hill*, 186.    11 *Barb.* 481.)

The execution being fair and regular upon its face, and issued upon a judgment regularly obtained, it is a full protection to the defendant Scott, the constable serving it. (20 *Wend.* 236. 24 *id.* 485. 5 *Hill*, 440, *and various other cases.*) The plaintiff, therefore, on being compelled to pay the judgment or be imprisoned on the execution, would have no remedy against him. The same authorities also show that the justice who issued the execution would be equally protected against an action in favor of the plaintiff. In *Luddington* v. *Peck*, 2 *Conn. R.* 700,) which was an action of trespass for false imprisonment, brought against the plaintiff in the execution, the court said, in reference to the clerk who issued the execution, that when the defendant produced the first execution unindorsed and unsatisfied, the clerk of the court was bound to renew or grant an alias. *He could not investigate the fact whether it had been paid or not.* Here the justice, conceding that he may have been and was informed of the facts, was called upon to place a judicial construction, at his peril, upon section 293 of the code. He had rendered a regular judgment for the recovery of the value of property which had been wrongfully levied upon and sold, under an execution, and was required in the regular exercise of the duties of his office, to issue an execution to collect the amount. I do not say that if he had known that the judgment had been fully and fairly paid or satisfied, or if he had acted corruptly and maliciously, that he would not have been liable. But there is no pretense that he did not act honestly, in this case; and I think if he erred he could not be made liable to the plaintiff in an action. (17 *John.* 145.)

The only remedy, it appears to me, of which the plaintiff could avail himself, would be by action against Norton. It is averred in the complaint and found by the justice, that Norton was "at the time of the issuing of the execution, and ever since has been and still is, utterly insolvent." If the plaintiff, therefore, is compelled to pay the amount of the execution, he can only bring an action against a person entirely worthless, and of whom nothing could be collected. I think that unless the defendants can be restrained from proceeding upon the execution, in the

Mallory v. Norton.

manner proposed by the present action, the injury to the plaintiff will be irreparable. The case of *Spear* v. *Cutter*, 5 *Barb.* 486,) was a motion to dissolve an injunction which had been previously granted, to restrain waste, and to prevent the removal of timber already cut. The court said, " In this case, *as the defendant is insolvent*, the injury to the plaintiff will be irreparable, if the defendant is permitted to remove or dispose of the timber he has already cut, on the premises in question." So here, the plaintiff must be compelled, if the present proceeding cannot be sustained, to pay the amount of the judgment, or be imprisoned upon the execution, and then is left to resort to an insolvent party for redress, and add to his injury by the payment of the costs attendant upon the recovery of a worthless judgment. The relief by *audita querela*, at common law, was intended to be *preventive*, to stay the commission of an injury contemplated by the defendant. Blackstone thus defines it : " An *audita querela* is where a defendant, against whom judgment is recovered, and who is therefore in danger of execution, or perhaps actually in execution, may be relieved upon good matter of discharge, *which has happened since* the judgment, as if the plaintiff has given a general release, or if the defendant has paid the debt to the plaintiff without procuring satisfaction to be entered on the record, and where the party has had no opportunity of pleading it, &c. In all such cases an *audita querela* lies, in the nature of a bill in equity, to be relieved against the oppression of the plaintiff." (3 *Black. Com.* 305.) This remedy seems to have been adopted in our state, with the common law ; (2 *John. Cas.* 258, 261. 1 *John.* 532. 9 *id.* 221. 17 *id.* 484. 4 *id.* 191,) and in other states. (10 *Mass. Rep.* 101. 17 *id* 153. 2 *Conn. Rep.* 700.) It is not abolished by the code, but preserved, (*see sec.* 468 ; 5 *How.* 51.) As matter of necessity, in my judgment, it should exist in this case. No motion, as heretofore remarked, could be made, as in 17 *Wend.* 631, and other cases above cited. The justice who rendered the judgment could entertain no such motion. The judge finds, and adjudicates, that Norton is attempting to enforce by execution the collection of a judgment already satisfied, and that

such execution is of no force whatever, but that the plaintiff's relief must be sought for in another form. The case he cites (1 *John. Ch. Rep.* 49,) was where a party went into the court of chancery for relief against an attempt to enforce a judgment in a court of record, which had been paid. The court said his remedy was by obtaining a judge's order to stay proceedings, which in that case was ample and easy. Here no such order can be obtained, the judgment being in a justice's court, and the county court not having obtained jurisdiction. The great difficulty which I have found, in this case, has arisen from the consideration of two questions, viz:

1. Whether this remedy, being in the nature of a bill in equity, the court has jurisdiction; the amount involved being less than $100. It may be remarked, and is suggested in the points presented by the plaintiff, that this is an ordinary suit at law, where the party is attempting to enforce the collection of a judgment already paid, and that it is the only one that can be resorted to for the purpose of preventing the threatened injury, and one over which the supreme court, on the law side, formerly had jurisdiction. But upon the supposition that this is an action on the equity side of the court, is it necessary, under the code, that the amount in controversy should exceed $100? The limitation of the jurisdiction of the court of chancery is prescribed, 2 *R. S.* 173, § 37. But this evidently had its origin in the distinction which then existed, between the courts of law and the court of chancery. The proceedings in the latter court were cumbrous, complicated and expensive, and it was deemed beneath the dignity of the court to take cognizance of causes of small amounts. Chancellor Kent remarked in one case that "a small sum will not bear the expense and burden of the litigation, and the remedy would be worse than the disease." (*Moore* v. *Lyttle,* 4 *John. Ch. Rep.* 183. *See Fullerton* v. *Jackson,* 5 *John. Ch.* 276; *Smets* v. *Williams,* 4 *Paige,* 364.) But the code, sec. 69, has expressly abolished the distinction between actions at law and suits in equity, and the forms of all such actions; and it declares that there shall

be but one form of action for the enforcement or protection of private rights and the redress of private wrongs. By section 468 all statutory provisions inconsistent with this act are repealed. And by section 140 all the forms of pleading heretofore existing are abolished, and the forms of pleading are to be determined by the code. In *Giles* v. *Lyon,* (4 *Comst.* 600,) it is said that law and equity, under the code, " were to be blended and formed into a single system, which should combine the principles peculiar to each, and be administered thereafter under the same forms, and under the same appellation." That case virtually decides that cases of an equitable nature may now be brought in the supreme court, where the amount in controversy does not exceed the amount for which an action at law may be entertained in the same court. Any other construction would destroy the evident intent of the section, and make permanent a rule, the reason for which does not longer exist. (*Van Santvoord,* 373, 4. 1 *Whit.* 306 *and cases cited.*)

2. The second question, concerning which I have had doubts, is, whether the payment by the plaintiff in this cause was authorized, under sec. 293 of the code. Clearly, if the payment had been made before judgment, though after verdict, it would not have been allowed, or treated as an " indebtedness" within the meaning of the section. (1 *Code Rep. N. S.* 311. *Davenport* v. *Ludlow,* 3 *Code R.* 66. *Robinson* v. *Weeks,* 6 *How.* 161.) But after judgment, a recovery in tort becomes a *debt,* and the cases above cited intimate that the amount may be paid to the sheriff under this section. If the judgment, however, obtained by Norton and Mallory, was a debt within the meaning and spirit of sec. 293, then it is contended that the exemption law is virtually repealed. It was for no ordinary debt, but was recovered for the proceeds of exempt property ; and if such a judgment can be converted into a debt, as contended by the plaintiff, there can be little or no exempt property but that may be so converted and brought within the section, and the whole object of the law would be entirely frustrated and destroyed. And this too notwithstanding the provisions of sec. 472, which section expressly declares that the code shall not affect the ex-

emption laws, or any of them, existing at the time of its enactment.

In the case of *The People* v. *The Utica Insurance Co.* (15 *John.* 358,) the court say that "such construction shall be given as shall not suffer the statute to be eluded, and that the intention of the legislature is to be resorted to, to discover the meaning, and that a thing within the letter is not within the statute if contrary to the intention of it." And in *Jackson* v. *Collins*, (3 *Cowen*, 89,) it is remarked "that the intention of the legislature should be followed with reason and discretion, though such construction seem contrary to the letter of the statute." Can it be contended or argued, as by the counsel for the defendants, with any degree of propriety, that the legislature intended to exempt a team from liability to execution, and yet to allow a judgment recovered for a sale of such team on that very execution, to be paid upon the same judgment on which it issued? It appears to me that one answer to this question is, that the party may protect himself in such case by bringing his action in the nature of replevin, for the delivery of his property, and thus have it restored, and the intention of the legislature be preserved. If he chooses to bring his action to recover the value, and obtains a judgment which *becomes a debt*, within all the cases, he takes the risk of subjecting himself to the provisions of sec. 293. Clearly any other creditor could have required the payment of the judgment, on an execution against the plaintiff—and on the ground that it *was "a debt"*—after judgment. And the plaintiff in the first judgment, by the course adopted, was placed in a like situation with other creditors.

The judgment should be reversed, and a new trial ordered; costs to abide the event.

JAMES, J. I think the action properly brought. Before the code an *audita querela* would lie; now an action. (§ 69.) Although the property was exempt, the judgment was not. If Norton wished to keep his property as exempt property he

should have brought replevin for his horse. Having voluntarily put it into judgment he elected to strip it of its exempt character, and make it subject to his debts.

The judgment should be reversed and a new trial granted.

BOCKES, J. concurred.

Judgment reversed.

[SARATOGA GENERAL TERM, January 1, 1856. *C. L. Allen, Bockes* and *James*, Justices.]