## SUPREME COURT.

### George W. Cobine agt. Cynthia St. John and Peter St. John, her husband.

No purely legal action can be maintained on the promissory note of a married woman.

Equitable actions may be brought to enforce the payment of the promissory notes of married women, out of property owned by them at the time of the execution of such notes, provided such notes are made for the benefit of their separate estates, or for their own benefit upon the credit of such estates.

Married women are not *personally* liable for the payment of debts contracted by them during coverture; and the statutes of 1848 and 1849, "for the more effectual protection of the property of married women," have not changed this common-law rule.

No *personal* judgment can be rendered against a married woman for a debt contracted by her during coverture.

In equitable actions, to charge the separate estates of married women with debts contracted by them during coverture, the demand for judgment should be, that the separate estate of the wife be charged with the payment of the debt set out in the complaint; and that her separate estate be applied to the payment of such debt; and that a receiver be appointed to take possession of such estate, and dispose of the same, or so much thereof as shall be necessary to satisfy such debt and the costs of the action.

In such actions, the complaint should show the nature of the debt, and, if it be evidenced by a promissory note or bond, the consideration thereof; and that the wife had a separate estate at the time the debt was contracted; and of what it consisted, and its situation and value; and that she made, or intended to make, the debt a charge or lien on such separate estate at the time she contracted it.

The supreme court has jurisdiction of such equitable actions, although the amount of the debt in dispute is less than one hundred dollars. *Semble* —A

court of a justice of the peace has not jurisdiction of an action on the promissory note of a *feme covert.*

Whether payment of a note or bond, executed by a married woman *as surety,* can be enforced against her separate estate—*quere?*

*Delaware Special Term, Jan.,* 1856.

DEMURRER to the complaint.

This action was brought upon a promissory note, set out in the complaint as follows :—

" *Walton, New Road, Sept.* 13, 1854.

" Six months from date, I promise to pay George W. Cobine fifty-eight dollars, with use.

    [Signed]    " CYNTHIA ST. JOHN."

The complaint showed that the defendant Cynthia St. John was the wife of the defendant Peter St. John at the time she executed the note. The demand for judgment in the complaint was as follows—to wit :

" The plaintiff demands judgment for the sum of fifty-eight dollars, with interest from the 13th day of September, 1854, and costs."

    SAMUEL GORDON, *for plaintiff.*

    WHITE & GLEASON, *for defendants.*

BALCOM, Justice. No action at law could be maintained on the promissory note of a married woman prior to the statutes of 1848 and 1849, " for the more effectual protection of the property of married women." When married women gave their promissory notes, for the benefit of their separate estates, or for their own benefit upon the credit of such estates, suits in equity were sustained, to make such notes a charge upon their separate estates; and such estates were appropriated by the court to the payment thereof. But the court did not make *personal* decrees against married women for the payment of such notes. *Femes covert* were allowed to encumber and charge their separate property with debts, almost as freely as *femes sole* could encumber their property. The authorities sustaining

these propositions are very numerous. (*The N. A. Coal Co.* agt. *Dyett,* 7 *Paige,* 9; 20 *Wend.* 570; 15 *Barb.* 28; 4 *id.* 407; 22 *Wendell,* 526; 1 *Sand. Ch. R.* 17; 2 *id.* 287; 3 *id.* 104; 1 *Barb. Ch. R.* 34; 3 *id.* 11; 1 *Coms.* 452; 2 *Story's Eq. J.* § 1,400, *pp.* 843 & 844; 2 *Kent's Comm.,* 4*th ed.,* 163 *to* 170; *Marshall* agt. *Rutton,* 8 *Tenn. R.* 545; 11 *How. Pr. R.* 235; *id.* 486; 4 *Comstock,* 9; 17 *Johns. R.* 548; 15 *Barb.* 555; See *English decisions collected in Law Library,* (*New Series,*) *vol.* 51, *chap.* 7, *p.* 513.)

The statutes of 1848 and 1849 have not removed the common law disability of married women to make valid executory contracts, unless such contracts are for the disposition of their separate property. These enactments operate as between the husband and the wife. They prevent the former from having any legal interest in the property of the latter; and they empower the wife to manage and dispose of her separate property, without the consent or interference of the husband. Here they stop. They do not authorize her to go into trade, and embark in commercial enterprises as a *feme sole.* (10 *How. Pr. Reps.* 109.) The husband's right to her society and her services remains unimpaired. (*Lovett* agt. *Whitbeck,* 7 *How. Pr. R.* 105.) The wife has no more right, since these statutes were enacted, to contract debts, irrespective of her separate property, than she had before they became laws. She is still regarded as a *feme covert,* as to all business transactions, outside of the management and disposition of her separate estate. She can mortgage that, or charge it with the payment of debts that she contracts in regard to it, or for her own benefit, on the credit of it; and some of the decisions show that her separate estate may be charged, in equity, with the payment of notes, where she signs as surety of her husband; but whether they are to be sustained to this extent need not now be determined.

It is well settled, that a married woman is not *personally* liable for the payment of any debt she may contract during coverture. The creditor cannot have a judgment against her personally. He can reach the property she may own at the time she contracts the debt; but he can never touch any prop-

erty she may afterwards acquire. The debts which are made a charge upon her separate property by the court, are such as operate by way of pledge or mortgage, or appointment of her property for the payment thereof. The creditor must be content with that portion of her estate upon which his debt can be made a charge, without having any right to charge her *personally* with the payment of any deficiency after such estate is exhausted.

If a married woman owns no property the day she gives her note, the obligation is void, and it remains perfectly worthless, although she thereafter has millions of property. She can only charge the property she has at the time she contracts debts. Her promises to encumber her future acquisitions are void. She is not personally liable therefor. If the statutes of 1848 and 1849 make her promises personally binding on her when she has property, then they are valid if made when she has none; and by such a construction of these statutes she would be personally liable on notes and bonds made by her during coverture, just as she would be were she a *feme sole*. Such could not have been the intention of the legislature. The declaration of Lord MANSFIELD, " that, as times alter, new customs and new manners arise," is no authority for such an interpretation of these enactments. They were framed more effectually to protect married women in the enjoyment of their property, and not to enable others to more easily get it from them.

In equitable actions, to charge the separate estates of married women with debts contracted by them during coverture, the demand for judgment should be, that the separate estate of the wife be charged with the payment of the debt set out in the complaint; and that her separate estate be applied to the payment of such debt; and that a receiver be appointed to take possession of the estate of the wife, and dispose of the same, or so much thereof as shall be necessary to satisfy such debt and the costs of the action. In such actions the complaint should show the nature of the debt; and, if it is evidenced by a promissory note or bond, the consideration thereof, and that the wife had a separate estate at the time the debt was con-

tracted, and of what it consisted, and its situation and value; and that she made, or intended to make, the debt a charge or lien on such separate estate at the time she contracted it.

The question, whether an equitable action can be sustained in the supreme court, on a demànd for less than one hundred dollars, is presented by this demurrer; and the case of *Shepard* agt. *Walker* (7 *How. Pr. R.* 46) is relied on to show that such an action cannot be maintained. The statute in force at the time of the adoption of the present constitution was, that "the court of chancery shall dismiss every suit concerning property, where the matter in dispute, exclusive of costs, does not exceed one hundred dollars." (2 *R. S.* 173, § 37.)

Section 3 of article 6 of the constitution declares, that "there shall be a supreme court, having general jurisdiction in law and equity." This provision confers jurisdiction upon the supreme court of all kinds of actions, both legal and equitable, without regard to the amount claimed, the nature of the relief demanded, or the value of the property or right in dispute. The statute before mentioned was enacted when equity and legal jurisdictions were separate; and when they were exercised by two distinct courts; and for the purpose of excluding small causes from the court of chancery, where the costs were enormous, which could as well be determined in the courts of law. It could not have been the intention of the legislature to deny parties all relief in the courts concerning property, where the amount in controversy did not exceed one hundred dollars. The sole object of the legislature must have been, to specify the court in which actions concerning property not exceeding one hundred dollars in value should be brought.

The preamble to the Code reads, " whereas, it is expedient that the present forms of actions and pleadings, in cases at common law, should be abolished; and that all *distinction* between legal and equitable *remedies* should no longer continue; and that a uniform course of proceeding in *all cases* should be established." The Code defines an action, and for some purposes a distinction is yet made between legal and equitable actions; but the distinction is in the pleadings, the mode of trial,

and the manner of giving and enforcing the judgment. The only difference as to the costs in legal and equitable actions, under the 'Code, consists in the fact, that they depend on the amount of the judgment and for which party it is given in legal actions, and are given or withheld, in the discretion of the court, in actions of an equitable nature, without particular regard to the amount in controversy, or the amount of the recovery, or for which party the judgment is given.

No provision is made for the dismissal of equitable actions concerning property, with costs, where the amount in dispute does not exceed one hundred dollars. And it may well be doubted whether the constitution and the Code have not virtually repealed the section of the Revised Statutes before quoted, making it imperative upon the court to dismiss every equitable suit concerning property where the matter in dispute, exclusive of costs, does not exceed one hundred dollars, with costs to the defendant. If the judiciary act of 1847 made this statute applicable to all equitable actions in the supreme court; the Code is so much in conflict with that act, that it must be deemed repealed. Much injustice will inevitably be done, unless this statute is considered repealed. It can be so considered, without doing violence to the settled rules for the construction of statutes—and no particular mischief will flow from such a ruling.

If this statute is still in force, the plaintiff in this action is remediless, unless a justice of the peace has jurisdiction to try equitable actions, to charge debts contracted by married women upon their separate estates, and compel the payment of such debts out of such estates; and it is not claimed that justices of the peace have jurisdiction of such actions.

All the authorities agree that a purely legal action will not lie on the promissory note of a *feme covert*. Now, is the plaintiff in this action entirely without a remedy, provided he shall, by an amended complaint, show this court that he has a good equitable cause of action against Mrs. St. John?

Chancellor WALWORTH, in *Dow* agt. *Shelden*, (2 *Paige*, 324,) clearly intimated that he would not consider the statute before mentioned as depriving him of jurisdiction of a foreclosure suit,

where less than one hundred dollars was due on the mortgage, if the mortgagee had no remedy except to foreclose by suit; and he said, "where the complainant had no other remedy, as where it appeared from the bill that the whole amount of the mortgage money was less than one hundred dollars, that the defendant was in possession, and was insolvent, so that satisfaction could not be obtained by a suit at law, and that there was no power of sale, or that there were subsequent incumbrancers, so that the mortgage could not be foreclosed by advertising for six months, this court might consider it an implied exception in the statute."

The same learned chancellor, in *Brown* agt. *Brown,* (1 *Barb. Ch. R.* 217,) used the following language : "Where no remedy exists elsewhere to enforce a right, this court will furnish such a remedy whenever it is necessary to prevent a total failure of justice." (*See* 1 *Barb. Ch. R.* 490.)

There must be a total failure of justice, in actions to charge the separate estates of married women, with debts of less than one hundred dollars, contracted by them during coverture, unless this court has jurisdiction of such actions. No other court can enforce such debts, and compel their payment; but this court can do so, whether it derives its authority from the constitution and the Code, or from an implied exception in the statute concerning the dismissal of suits by the court of chancery, where the amount in question does not exceed one hundred dollars ; and justice requires it should do so.

But for other reasons, before assigned, the complaint in this action is defective. It does not state facts sufficient to constitute a cause of action against a married woman, on a promissory note made by her during coverture.

Judgment is, therefore, ordered for the defendants on the demurrer, with leave to the plaintiff to amend his complaint on payment of costs.