## SUPREME COURT.

DANIEL B. MARSH and others, appellants, agt. PHILOMELA R. BENSON and ALFRED G. BENSON, her husband, respondents.

This court has *no jurisdiction in equity* in a suit concerning property, where the matter in dispute, exclusive of costs, does not exceed the value of *one hundred dollars*. BALCOM, J., *dissenting, in the next following opinion*.

*Sixth District General Term, July*, 1860.

*Present*, MASON, BALCOM, CAMPBELL *and* PARKER, *Justices*.

This is an appeal from a judgment entered at the Cortland county special term, in August, 1859.

The action was brought to charge the separate estate of the defendant, Philomela R. Benson, with the payment of a debt of less than $100, alleged to have been contracted by her after her marriage, for the benefit of such separate estate; and for the appointment of a receiver to take charge of said estate, and apply so much thereof as should be necessary to the payment of said debt, and costs of suit.

On the trial, it being stated and admitted by the counsel for the plaintiffs, in his opening, that the action is an equitable one, and that the plaintiffs' claim against the defendant, Philomela R. Benson, which is sought to be enforced and collected out of her separate estate, is less than $100. The court held that it had no jurisdiction of the action, and dismissed the complaint with costs.

John T. Davidson, *for appellants.*
L. O. Aikin, *for respondents.*

By the court, Parker, Justice. This is an action in which the plaintiffs seeks equitable relief only, and the amount claimed is less than one hundred dollars. At special term the complaint was dismissed for want of jurisdiction on that ground, and the only question raised on the appeal from the judgment entered at special term is, whether this court is bound, as the court of chancery would have been before the adoption of the present constitution, to dismiss the suit, pursuant to the 37th section of article 2, title 2, chap. 1, of the 3d part of the Revised Statutes.

Notwithstanding, it is declared in § 69 of the Code, that "the distinction between actions at law and suits in equity, and the forms of all such actions and suits heretofore existing are abolished;" it is undeniable that we still have

Marsh agt. Benson.

actions at law and suits in equity: and this distinction is constantly recognized by this court and the court of appeals; and the Code itself has not failed to make provisions founded upon such distinction. Indeed, the constitution recognizes and affirms the distinction as one existing and to remain, where it gives to the supreme court, in art. 6, § 3, "general jurisdiction in law and equity;" and where, in § 5 of the same article, it provides that " the legislature shall have the same powers to alter and regulate the jurisdiction and proceedings in law and equity as they have heretofore possessed;" and when, in § 10 of art. 6, it provides that " the testimony in equity cases shall be taken in like manner as in cases at law. (*See Reubens* agt. *Joel*, 3 *Kern. R.*, 488.) The effect of these provisions of the constitution, as I understand them was, so far as proceedings in equity are concerned, to transfer to the supreme court the general jurisdiction and powers then existing in the court of chancery, and to continue to the legislature the same powers in reference to such jurisdiction and proceedings as they then had. This court, from the time of its organization, became vested with such general jurisdiction and powers of the former court of chancery, precisely as that court had possessed them up to that time, it being declared in the 17th section of art. 1 of the constitution, that " such acts of the legislature of this state as are now in force, shall be and continue the law of this state, subject to such alterations as the legislature shall make concerning the same; but all parts of the common law, and such of the said acts, or parts thereof, as are repugnant to this constitution are hereby abrogated." (*See Wilcox* agt. *Wilcox*, 4 *Kern. R.*, 575, 579.)

At the time the constitution went into effect, the provisions of the statute above referred to, excluding from the jurisdiction of the court of chancery " every suit concerning property, where the matter in dispute, exclusive of

costs, does not exceed the value of one hundred dollars," was in force.

But if any legislation were necessary to modify the general jurisdiction of the court, in accordance with that provision of the statute, it was had in the judiciary act of 1847, whereby it was enacted that "the supreme court, organized by this act, shall possess the same powers, and exercise the *same jurisdiction* as is now possessed and exercised by the present supreme court and court of chancery," &c., "and *all laws* relating to the present supreme court and court of chancery, or any court held by any vice-chancellor, and the jurisdiction powers and duties of said courts, the proceedings therein and the officers thereof,. their powers and duties shall be applicable to the supreme court organized by this act, the powers and duties thereof, the proceedings therein, and the officers thereof, their powers and duties, so far as the same can be so applied, and are consistent with the constitution and the provisions of this act." (*Session Laws* 1847, 323, § 16.) This is a re-enactment of the provision of the statute above referred to : does § 69 of the Code repeal, or in any manner affect, the jurisdictional provisions of that act ?

The only effect of that section of the Code is, as I think, to abolish the previously existing distinction between actions at law and suits in equity, so far as the forms of action are concerned, and to reduce all actions to the same mode of proceeding.

The language of the section is entirely consistent with this construction. Taking it all together, its object is plain : to reduce all actions to one form, denominated a "civil action." The first and last clauses are correlatives : the first doing away with an existing condition, the last providing for a new condition in its place. When, therefore, it provides that "the distinction between actions at law and suits in equity, and the forms of all such actions and suits heretofore existing are abolished;" and follows with

the provision : " and there shall be, in this state, hereafter, but one form of action for the enforcement or protection of private rights, and the redress of private wrongs, which shall be denominated a civil action ;" it manifestly intended to substitute one formal method of proceeding in court for the two others previously existing in equity and at law. A " suit " or " action " is defined to be " the formal method of pursuing and recovering one's right in a court of justice." ( *Worcester's Dictionary.* ) The distinction between actions at law and suits in equity, then, which is abolished, is the distinction between their " formal methods of pursuing and recovering " rights in court. This is the extent of the general object of the Code in this regard, as shown in its preamble, in which it is declared to be expedient that " the distinction between *legal and equitable remedies* should no longer continue, and that a uniform course of proceeding in all cases should be established," the uniform *course of proceeding* substituted for the existing legal and equitable remedies.

This is all the codifiers contemplated, as fully appears from their report to the legislature. They say : " In our remarks upon this section, we shall consider separately the two propositions which it involves. The first is the abolition of the distinction between actions at law and suits in equity." After adverting to the rise and establishment of the court of chancery, and the difference of judicial opinion as to the precise boundary which separated the powers of law and equity which prevailed, and to the causes which led the convention to adopt the provision of the constitution abolishing the court of chancery, and declaring that " there shall be a supreme court having general jurisdiction in law and equity." They say " a reference to the debates of the body will show that this result was effected by the conviction which was entertained of the injustice of subjecting a party whose rights were involved, to the uncertain chances in the selection of the proper forum by which they were to

Marsh agt. Benson.

be determined; and it is not a little singular that this important change in the judicial establishment of the state, owes its origin mainly to the fact that this injustice was the result rather of the *modes of proceeding* than of the rules of determination adopted by the several legal and equitable tribunals" (*p.* 69). Again, they say "It is no part of our purpose to present the principle of an union of law and equity jurisdiction upon a broader basis than that which has reference to *their forms of proceeding*. It is enough for us to know that the fundamental law has united these functions in one tribunal, and in recommending to the legislature a system of practice by which those functions may be conveniently examined, it is only necessary that we should take care not to encroach upon substantial rights, keeping in view the distinction between rights, on the one hand, and the means of their ascertainment and enforcement on the other, the only question is, whether a mode of proceeding common to all controversies, whether known as legal or equitable, can be safely and conveniently prescribed" (*p.* 74.)

All that the codifiers had in view, as it seems, was the prescribing of a safe and convenient *mode of proceeding* common to all civil controversies, whether legal or equitable, or in the language of the act of the legislature under which they were appointed, and by which their duties are prescribed, providing " for a uniform course of proceeding in all cases, whether of legal or equitable cognizance" (*Laws of* 1847, *ch.* 59, § 8), and such, I think, for the reasons above appearing, was the intention of the legislature in adopting that section.

I have said that we still have actions at law and suits in equity. A suit appealing to the equitable powers of the court, and asking for equitable relief, is as properly now a suit in equity as ever. The mode of conducting such a suit in court, is the same as the mode of conducting a suit asking legal relief, or a suit at law, except in those respects

in which the Code has provided for a distinction, as in §§ 253 and 254. The first of these sections having reference to actions at law (except so far as it provides for actions for divorce), secures a jury trial, as required by the constitution; the second, having reference to suits in equity, in which jury trials have not, in the language of the constitution, " been heretofore used " (*art.* 1, § 2), provides for a trial by the court, as permitted by that article.

The Code provides for further distinctions in §§ 274 and 275, as to the relief granted, and §§ 304 and 306 as to the costs.

This distinction between legal and equitable actions is recognized at every circuit in the trial of causes, pursuant to § 257 of the Code; equity cases, or issues of fact, to be tried by the court, being postponed on the calendar to actions at law, or issues of fact to be tried by a jury.

So it is constantly recognized by this court and by the court of appeals.

An action for mere equitable relief will not be sustained where the plaintiff has a complete remedy at law. (*See Mills* agt. *Black,* 30 *Barb. R.,* 549 ; *Wilson* agt. *Forsyth,* 24 *id.,* 105 ; *Mace* agt. *The Trustees of the Village of New-burgh,* 15 *How. Pr. R.,* 161 ; *Bouton* agt. *The City of Brooklyn,* 15 *Barb. R.,* 375 ; *Crippen* agt. *Hudson,* 3 *Kern. R.,* 161 ; *Heywood* agt. *The City of Buffalo,* 4 *Kern. R.,* 534.) In the latter case, the court say " It is still the law that a party who brings an equitable action must maintain it upon some equitable ground; and if his cause of action is of a legal and not an equitable nature, he must bring a legal action, or pursue a legal remedy. When a matter is clearly or *prima facie* one of legal cognizance, a party must, in order to maintain an equitable action upon it, state clearly facts sufficient to entitle him to equitable relief, and to show that a perfect remedy cannot be obtained at law."

The distinction between actions at law and suits in equity, and the distinct jurisdictions in regard to them are

also recognized in *Sage* agt. *Mosher*, 28 *Barb. R.*, 288; *Reubens* agt. *Joel*, 3 *Kern. R.*, 488; *Voorhees* agt. *Childs' Executor*, 17 *N. Y. R.*, 354.

In this discussion I have not been unmindful of the cases which seem to hold a different doctrine, such as *Giles* agt. *Lyon*, 4 *Comst. R.*, 599; *Dobson* agt. *Pearce*, 2 *Kern. R.*, 156; *Crary* agt. *Goodman, id.*, 266; *Phillips* agt. *Gorham*, 17 *N. Y. R.*, 270. In *Giles* agt. *Lyon*, the court of appeals decided that the 47th section of the amended Code of 1849, authorizing the supreme court to transfer " equity cases " to the superior court of the city of New York, applied only to suits in equity commenced under the previous system, and did not authorize the transfer of an action commenced under the Code, although such action was strictly equitable according to former distinctions. The construction of the phrase " equity cases " *in that section* was the question to be decided, and the decision was as above.

Judge GARDINER, in giving the opinion of the court says: " The accumulation of causes of this character in the former court of chancery, and the embarrassed condition of the new courts, particularly those in the first district, in consequence of their transfer to them, was notorious; and one great object in creating a new branch of the superior court, was to relieve the supreme court of that district from the burden of investigating causes which were not properly their own. The 47th section was designed as a remedy for the difficulty, and framed accordingly." This is a sufficient reason for the decision; indeed, such being the object for which the 47th section was framed, the construction of the phrase arrived at was inevitable.

Judge GARDINER, it is true, in his opinion discusses the effect of the 69th section of the Code, and uses language which might, taken by itself, imply a different understanding of it from the one above given, and yet from the whole of his discussion, as bearing on the question to be decided, I do not understand his opinion to be adverse to the position

Marsh agt. Benson.

herein taken. His argument, drawn from the 69th section, is that, inasmuch as that section "ordains a *new name* for all proceedings to be thereafter instituted for the redress of private grievances," to wit, a " civil action," the old nomenclature of " actions at law" and " equity cases " being done away, it would be repugnant to construe the term " equity cases " in § 47, as applying to actions commenced under the new system.

In *Dobson* agt. *Pearce*, and *Crary* agt. *Goodman*, the court hold that equitable defences may be set up to actions at law. This is expressly authorized by the Code, in § 150, which is a sufficient reason for the decision, and although when these actions were commenced, prior to 1852, that section did not contain the *express* authority which it was made to contain by the amendment of that year, still in *Dobson* agt. *Pearce*, Judge ALLEN, in giving the opinion of the court, seems to give the same effect to the section before as since the amendment, quoting it as it now is, and applying it to the case. *Crary* agt. *Goodman* was decided expressly upon the authority of *Dobson* agt. *Pearce*.

In *Phillips* agt. *Gorham* it was decided that in an action to recover the possession of land, the plaintiff may attack a deed, under which the defendant claims, upon both legal and equitable grounds. That case came within the provisions of § 167, as expressly declared by Judge JOHNSON, who gave the opinion of the court.

Although, in these cases, the discussions contained in the opinions delivered, might lead to a different conclusion from the one at which I have arrived in reference to the question of an existing distinction between legal and equitable actions, still I do not understand that they, or any of them, have *decided* that question adversely to the view I have taken of it; and I do not see any conflict between the Code and the section of the Revised Statutes above referred to. The jurisdiction of the court is not reached by § 69 of the Code, but remains as it stood when the Code

was enacted, subject to the aforesaid provision of the Revised Statutes, which prohibits the court from taking jurisdiction in equity in any suit concerning property, where the matter in dispute, exclusive of costs, does not exceed the value of $100.

Upon this precise question there has been some conflict in the decisions of this court in different districts.

Judge MARVIN held, at special term, that the provision of the Revised Statutes above cited is still in force, and that this court is limited in its jurisdiction by that provision. (*Shepard* agt. *Walker,* 7 *How. Pr. R.,* 46.)

In *Mallory* agt. *Norton* (21 *Barb. R.,* 424) the court, at general term in the fourth district, held that an action in the nature of a suit in equity might be maintained against a party who had procured an execution to be issued on a justices judgment against the body of the defendant therein, the judgment having in fact been paid, for the purpose of perpetually enjoining such party from enforcing the collection of such judgment and execution, notwithstanding the amount of the judgment was less than $100. Although Mr. Justice C. L. ALLEN, in giving the opinion of the court, discussed the question of the court's jurisdiction, under the provision of the Revised Statutes above cited, and came to the conclusion that the said 37th section was in effect repealed; yet it seems very clear that § 37 has no application to that case, for the reason that the relief asked for was not merely that the judgment be decreed satisfied, but that the party should be perpetually enjoined from enforcing the execution which was against the body of the plaintiff in that action. The suit was not one "concerning property" merely, to which kind of suits alone that section applies. (*Schroeppel* agt. *Redfield,* 5 *Paige,* 245.) The court, therefore, was not limited in its jurisdiction by that section, and very properly entertained jurisdiction of the case.

In *Cobine* agt. *St. John* (12 *How. Pr. R.*, 333) my brother, BALCOM, has come to a different conclusion from the one to which I have come upon this question, and his dissenting opinion in this case maintains the position then taken by him.

It is said that unless this court will take jurisdiction of this action, the plaintiffs are remediless, and that our judicial system affords no means for the collection of debts of less than $100 against married women. It is true, but no more so now than it has always been, at least since the enactment of the 37th section above referred to, that no mere equitable demand of less than $100 can be enforced in our courts. If this is an anomaly, it is one which the legislature alone can correct.

I understand that this court, in this district, has repeatedly held, at general term, that it cannot take cognizance of such actions, and I see no reason for departing from the rule held in those cases.

In my opinion the decision at special term was right, and the judgment appealed from should be affirmed, with costs.

MASON and CAMPBELL, Justices, concurred. BALCOM, Justice, dissented, for the reasons contained in his opinion, in the following case of *Durham* agt. *Willard.*