C. C. WOODRUFF, PLAINTIFF IN ERROR, V. CLARA A. WHITE, DEFENDANT IN ERROR.

1. **Instructions** asked by plaintiff in error, *Held*, Rightly refused by the trial court.

2. **Execution:** LEVY: EVIDENCE. A statement made by J. A. W., the husband of the defendant in error, to the effect that he desired to hasten certain corn to market to prevent the same being taken in execution to pay the rent of the land on which the corn was raised, the corn involved in the suit at bar not having then been produced, and there being no evidence of agency on the part of J. A. W., *Held*, Inadmissible in evidence to sustain a levy on the last named corn made upon an execution issued on a judgment against J. A. W., rendered for the rent of the land on which the first named corn was raised.

3. **The Instruction** numbered 2, asked by plaintiff and given by the trial court, examined and approved.

4. **Verdict Against Evidence.** There being no sufficient evidence to sustain the verdict for damages, *Held*, That the judgment would be reversed unless all of such damages except a nominal sum be remitted within the time specified.

ERROR to the district court for Johnson county.    Tried below before CHAPMAN, J.

*C. K. Chamberlain* and *A. M. Appelget,* for plaintiff in error.    Damages excessive: *Morehead v. Adams,* 18 Neb., 574.    *Wasson v. Palmer,* 13 Neb., 378.    Instruction 2, 3, and 4, asked for: *Koch v. Rhodes,* 10 Neb., 445.    *Lipscomb v. Lyon,* 19 Neb., 511.    *Thompson et al. v. Loenig,* 13 Neb., 386.    *Seitz v. Mitchell,* 4 Otto, 580.    Evidence: *Hinson v. Walker,* 65 Texas, 103.    1 Greenleaf on Ev., Sec. 113–114, 11 Ed.    *Riehl v. Evansville, etc.,* 104 Ind., 70.    *Bunker v. Kelsey,* 82 Ind., 51.    *Hamburg v. Wood,* 66 Texas, 168.    *Pomeroy v. Bailey,* 43 N. H., 125.    *Osgood v. Eaton,* 63 N. H., 355.

*S. P. Davidson,* for defendant in error, cited: Wait on Fraud. Conv., 277.    *Chadwick v. Fornner,* 69 N. Y., 407.    *Paige v. Cagwin,* 7 Hill, 361.    *Hinson v. Walker,* 65 Texas, 103.    *Chase v. Walters,* 28 Iowa, 468.

COBB, J.

This was an action of replevin commenced before a justice of the peace of Johnson county by Mrs. Clara A. White against C. C. Woodruff.    It appears from the record that T. Appelget & Son had a judgment in the county court of said county against J. A. White, the husband of Mrs. White, the defendant in error here.    They issued an execution on the said judgment, and placed it in the hands of C. C. Woodruff, the plaintiff in error here, who was the sheriff of said county, who, by virtue thereof, seized, levied on, and took into his possession, as the property of said J. A. White, a quantity of corn in the ear, situated upon the farm of Henry Rogge, in said county.    The taking of this corn by the sheriff on said execution, and which corn was claimed by Mrs. Clara A.

White, constitutes the subject-matter of the litigation. The cause was appealed to the district court, where there was a trial to a jury, which found for the plaintiff, and assessed her damages at the sum of forty dollars.

In this court the errors assigned and argued in the brief of counsel are four in number. They will all be considered, but not in the order in which they are presented.

The following instructions were asked by the defendant, and refused:

"2. Transactions between husband and wife in relation to the transfer or sale of property from one to the other, by reason of which creditors are prevented from collecting their just dues, should be scrutinized very closely; and the good faith of such transactions should be established beyond question. .

"3. Where property is transferred by a husband to his wife, after a debt is contracted by the husband, as against that debt she must show by a preponderance of proof that she paid a valuable consideration, and that such transfer was not made for the purpose of defrauding existing creditors.

"4. The court instructs the jury that a married woman claiming property purchased after marriage, in opposition to her husband's creditors must show that the consideration therefor was paid out of her separate estate."

That these instructions state the law of the cases to which they are severally applicable cannot be denied. The first of the said instructions, or No. 2, as they are numbered in the record, is, I think, a copy of the 6th instruction given in the case of *Lipscomb v. Lyon*, 19 Neb., 511, cited by counsel for the plaintiff in error, and its giving approved in the opinion of this court. But in that case the instruction was based upon the evidence that the replevied property, together with the house in which the same was kept and the lot upon which said house was

situated, were sold and transferred by the debtor husband to the plaintiff wife in payment of a loan or advance of money alleged to have been made by the wife to the husband in a foreign state, three years before the alleged transfer of the property.

The next instruction of the series refused is a substantial copy of the syllabus of the case of *Thompson v. Loenig*, 13 Id., 386, also cited by counsel for the plaintiff in error. But in that case the debt for which the replevied property had been taken in execution was contracted by F. A. Loenig, the execution debtor, in 1873, at which time he was the owner of 160 acres of land upon which he resided, and that he also possessed a quantity of stock and farming implements. In 1875 judgment was rendered on said claim against Loenig. In 1879 execution was issued thereon, and a quantity of corn and fifty fat hogs levied on. This property was replevied by Mrs. Loenig, wife of F. A. Loenig. On the trial the plaintiff's evidence of her title to the property consisted mainly in her possessing the title to the land upon which the said corn and hogs were raised, and as to this title it appeared that, in December, 1874, after the contracting of said debt by F. A. Loenig, he, together with Mary S. Loenig, the plaintiff in said replevin suit, conveyed the said land to one James A. Pickett, for the expressed consideration of $500. In the same month Pickett and wife conveyed the land to Mary S. Loenig, the said plaintiff, for the expressed consideration of $600. She testified on the trial that she borrowed this six hundred dollars from friends, in small sums, but failed to name any person from whom she borrowed any part of it. Nor was there any evidence that Pickett paid a single dollar of the alleged consideration of $500.

Substantially the same controlling facts were proved, or evidence offered to prove them, in the case of *Koch v. Rhodes*, 10 Id., 445, cited also by counsel for plaintiff in error, and from the opinion in which the 4th or last of

the instructions, the refusal to give which is complained of, was substantially copied. But in the case at bar there is no evidence of trading, or of transfers of property between the defendant in error and her husband, that would render either of the said instructions applicable or admissible. The evidence introduced or offered by defendant in the court below was confined to very narrow limits, and did not include any fact tending to impeach the *bona fides* of the plaintiff's claim of title to the replevied property.

Frank Hutcheson, a witness for the defendant, testified that he was acquainted with the parties, and with John A. White, the husband of the plaintiff. In answer to the Q. State what conversation you had with him in the forepart of the month of February, 1885, in relation to his property and indebtedness? he made the A. That he was in the field husking corn; that White had been up northwest some place, and when he came back he stopped and asked witness how the husking was, and said he wanted to get all the teams he could, and get his corn in as soon as he could, and get his money and get it into his pocket. He said, "these fellows might whistle for their rent." Witness asked about the horses, how he would fix them? He said, "he would fix them all right." That is all he said, and then drove to the house.

Q. Did he name any parties that might whistle for their money?

A. He did not; he did not name any party that I remember of; he might have, I would not be positive as to that.

Q. On what farm were you working?

A. It belonged I believe to McKinster. At the time I believe it was in dispute. I don't know who did own it then.

In answer to further questions the witness stated, "that this was in the first part of February, and that he had no

other conversation with White in regard to the disposition of the property."

On cross-examination, the witness testified that, "no other person was present at the time of this conversation except White and witness, the plaintiff then being at the house a mile distant; that the conversation was in reference to the corn raised in the season of 1884, and had no reference to the corn raised in 1885, because it had not then been raised."

On motion of the plaintiff, the whole of the testimony of the witness was stricken out, as incompetent and irrelevant. The exclusion of this testimony constitutes the third ground of error argued in the plaintiff in error's brief. At the date of this conversation between witness and White the corn which constitutes the subject-matter of this litigation had not been raised, nor, so far as it appears, had any steps been taken to produce it. There is no evidence that at that time, or at any previous time, had White acted as the agent of his wife in any matter or transaction whatever. There is no evidence of the sale or transfer of any property from White to his wife, the plaintiff, to which the above conversation or statements of White could be construed to refer.

While it is true that a party cannot present his entire evidence at the same time, and that it often occurs that in order to get his testimony before the court and jury he must introduce evidence of facts which, while unexplained by other testimony, are irrelevant and apparently incompetent, but in such cases evidence of such facts will be received by the court upon the assurance of the counsel that they will be followed by further testimony of other witnesses establishing facts showing their competency and relevancy, it is only upon such assurance, expressed or implied, that such testimony will be received; and always with the expressed or implied reservation on the part of the court that, upon the failure of the party to introduce such

explanatory or completing testimony, that received, and thus left unexplained and incomplete, will be stricken out if demanded by the adverse party. It does not appear that the plaintiff in error signified to the court his intention to introduce other testimony showing the competency and relevancy of Hutcheson's testimony, either before or after it was stricken out. Nor was there any offer by him of evidence to that effect. It is true the defendant offered M. Shay to prove that, in the first part of the month of February, 1885, John A. White told the witness, while he was shelling corn on the McKinster place, that he did not propose to pay any of the rent on the land; that he wanted to get his property off as soon as possible. That was the farm in Otoe county, the McKinster land, the corn of 1884; the corn of 1885 not then having been raised. This evidence was merely cumulative to that of Hutcheson; the only material difference between the witnesses being, that the one was husking, and the other was shelling corn. It in no manner tended to explain, complete, or to show the relevancy and competency of Hutcheson's testimony.

While on the subject of defendant's testimony, I will say that the only other witness offered by plaintiff in error was J. T. McKinster. The only purpose and object of his testimony was to contradict some of the statements of Mrs. White, the plaintiff, when on the stand as a witness on her own behalf, as to her testimony on the trial before Justice Borlan.

The plaintiff in error in the brief claims that the statements made by John A. White to the witnesses Hutcheson and Shay were admissible, on either of the three theories: 1. That he was acting as the agent of his wife; 2. That there was a conspiracy between the husband and wife; and 3. That there was no actual and apparent change in possession or condition.

There are doubtless cases to which these principles of law would be strictly applicable; but it is deemed sufficient

in this case to say that there was neither evidence introduced nor offered tending to prove agency or conspiracy, or the possession or condition of anything existing at the time of the declarations, to be changed either actually or apparently between that time and the taking of the corn by the plaintiff in error.

Following down the plaintiff's brief, it may be admitted that the declarations of one conspirator are evidence against both, and that whether there was a conspiracy, was a question for the jury to determine from the circumstances surrounding the transaction; and that declarations by one in possession as to the nature of his holding are evidence to be considered in the trial of that issue. Under this head plaintiff in error contends that the conversation between John A. White and the witnesses Hutcheson and Shay was sufficient to show a fraudulent intent on the part of White, and it would be upon the plaintiff to show that she was no party to and had no knowledge of such fraudulent intent.

This proposition would probably be true in a controversy between those parties as to the title of property shown to have been in the possession of John A. White, at the time of the conversation, and subsequently transferred to the plaintiff. But if applicable to the case at bar, in any event it would have to be made so by evidence neither introduced nor offered on the trial which we are now reviewing.

The fourth point of the plaintiff in error's brief is directed to the second instruction to the jury, asked by the plaintiff below, as follows:

"2. The court further instructs the jury that if they believe from the evidence that the plaintiff, notwithstanding she is and was a married woman, rented the farm on which the corn in controversy was grown, and managed the planting and cultivation of the crop, had the same gathered, and herself paid for the hired help employed in

raising said crop, and paid the rent of the farm, and had
the corn in controversy in her possession as her property
at the time it was levied upon by the sheriff, then in that
event her property is not liable for her husband's debts,
and if you believe she acted in good faith in the matter,
you will find for the plaintiff."

The objection to this instruction, though not very clearly
set forth in the brief, seems to be that plaintiff in error
claims that it should have told the jury that it was incum-
bent on the plaintiff to have shown by evidence from what
source she obtained the money with which she paid the
hired help employed in raising said corn, otherwise it would
be presumed that such was the money of John A. White,
and that being his money which produced the corn, the
corn was his property and not that of the plaintiff. If
this be the position of the plaintiff in error, then his ob-
jection to the instruction is negative and not positive. In
other words, the fault in the instruction of which he com-
plains consists not in what it contains, but in that which it,
does not contain. In that contingency it was clearly the
duty of the plaintiff in error to have presented instructions,
of such matter of law as was necessary to supplement the
instruction given. This he probably aimed to do in those
presented by him, the refusal of which we have already
considered. But I think that the instructions to the jury,
considered fairly together, present the law of the case ap-
plicable to the evidence, and are not open to the objection,
offered.

The *fifth* point made is based upon the sustaining by the
court of the plaintiff's objection to a certain question pro-
pounded to her by defendant, as follows:

"What was the description of the teams and work cattle
that you got from your father-in-law and brother-in-law,
and so on?" Which was objected to as not proper cross-
examination, and the objection sustained by the court.

The plaintiff in her direct examination had not testified
48

as to any teams or cattle, but upon her cross-examination she was interrogated by the defendant, as follows:

Q. What teams did you work the place with?

A. Worked it with teams belonging to my father-in-law and brother-in-law.

Q. How came you to get these teams of your father-in-law and brother-in-law?

A. I leased them.

Q. Do you know where they got those teams?

A. Yes; they got them of John A. White.

Q. How long had your husband had those teams prior to that?

(Not answered.)

Q. Were they not the same teams they farmed the McKinster place with the year before?

A. I think they were.

Q. You know they were, don't you?

A. Well, I guess I do; yes.

Then follows the question objected to and ruled out. The contention of plaintiff in error is, that the court should have required the plaintiff below to have answered the question rejected, to have enabled him to show by other evidence that the teams and work cattle mentioned had been fraudulently transferred by John A. White to his father and brother, who had leased them to the plaintiff for the purpose of cultivating the Rogge farm and producing the corn in controversy. Had the defendant offered testimony tending to prove the fraudulent transfer of any teams or work cattle by John A. White to his father and brother, or either of them, which identified them with the teams and work cattle leased by the plaintiff, or had he notified the court of his ability and intention to introduce such evidence, the question would have been fairly presented, whether it was competent on cross-examination to lay the foundation for the introduction of such evidence; but without offering to, or even expressing an intention to

introduce such evidence, neither that court nor this would be required to mark and examine the identity and description of teams and work cattle, though never so entertaining in pastoral detail. As the case then stood, and was finally left by plaintiff in error, no description of the teams or work cattle with which plaintiff produced the corn in question was relevant or competent evidence in the case.

As to the *sixth* point in the brief, I cannot agree with the plaintiff in error in his assertion that the evidence wholly fails to show that the plaintiff was the *bona fide* owner of the property. She certainly did not fail to prove that the property was in her possession when levied on by the sheriff defendant; and as I view the case, such possession in fact was sufficient of itself to entitle her to the verdict as against any evidence introduced, or offered, as shown by the bill of exceptions, tending to prove property in John A. White, the execution defendant.

We now return to the first point presented by plaintiff in error in the brief, *that the damages are excessive.*

On reference to the bill of exceptions I fail to find any evidence of damage to the plaintiff by reason of the levying upon the corn. It was not removed from the place of storage where the sheriff found it. There is no evidence of depreciation of the price of corn while the same was in the legal possession of the sheriff, nor of any other element of damages. The damages found by the jury were not only excessive, but are unsustained by any evidence adduced.

The judgment will therefore be reversed and the cause remanded, unless the defendant in error shall, within thirty days from the filing of this opinion, enter a remittitur of $39.95.

But in case such remittitur be filed within the time here limited, the judgment of the district court in all other respects, together with damages for five cents, is *affirmed.*

JUDGMENT ACCORDINGLY.

THE other judges concur.