[No. 502. Decided June 24, 1892.]

HUGH O'HARE, *Respondent,* v. D. M. DUCKWORTH, *Sheriff of Mason County, Appellant.*

### FRAUDULENT CONVEYANCE—EVIDENCE.

In order to show that the sale of certain goods was made to defraud creditors, it is admissible to prove, although no knowledge of the conversation is shown on the part of the grantee, that the debtor had, in conversation with a certain witness on the day the bill of sale was executed, stated to the witness that he was indebted to various persons, and wanted witness to direct him to some good attorney upon whom he could rely to fix up a transfer of his stock to some friend, so as to put his property in such shape that creditors could not get hold of it.

*Appeal from Superior Court, Mason County.*

The facts are stated in the opinion.

*Snell & Bedford,* for appellant.

*Eddy & Gordon,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This was an action by Hugh O'Hare against D. M. Duckworth, sheriff of Mason county, Washington, for damages for taking and detaining certain property which had been levied upon and sold by said sheriff by virtue of a writ of attachment in an action wherein S. J. Holland & Co. were plaintiffs, and one Pat O'Hare, defendant. The property was levied upon as the property of the said Pat O'Hare. Hugh O'Hare claimed to have bought the property of Pat O'Hare prior to the levy, and the defendant claimed that said alleged sale was fraudulent and that it was made without consideration, and made in collusion with the said Pat O'Hare for the purpose of fraudulently placing the property beyond the reach of the creditors of the said Pat O'Hare.

Upon this issue the parties went to trial, and to sustain his cause of action the defendant offered to prove that a certain witness had had a conversation with the judgment debtor on the same day the bill of sale was made to the plaintiff and before it was executed, in which conversation the judgment debtor, Pat O'Hare, stated to the witness that he was lawfully indebted to various persons and that, inasmuch as the witness and he had been good friends, he wanted the witness to direct him to some good attorney upon whom he could rely to fix up a transfer of his stock to some friend and put his property in such shape that his creditors could not get hold of it. To this the plaintiff objected, and, upon the statement of the counsel for the

defendant that there was no evidence that the conversation was brought to the knowledge of the plaintiff, the court sustained the objection, which ruling of the court is assigned as error by the appellant.

We think the contention of the appellant is abundantly sustained both by reasoning and authority. The defendant cites an array of authorities to prove the following propositions:

1. That the sale of property for an adequate consideration, though made with the intent to hinder and delay creditors, is not void as against a purchaser who, although he knew of the vendor's indebtedness, did not participate in or know of the fraudulent intent.

2. That the purchaser is not affected by the fraudulent intent of his vendor, unless he has knowledge or notice of such intent or of such facts or circumstances as would put a prudent man upon inquiry.

3. Where a party purchases property in good faith, for value, his title is not affected by any intent of the grantors to defraud their creditors by a sale.

4. That the fraudulent intent must have been shared by grantor and grantee alike. That there must be mutuality of participation in the fraudulent intent on the part of both the vendor and purchaser. And other kindred propositions.

That the authorities cited sustain the propositions advanced there can be no doubt, but, conceding the soundness of the propositions, they do not reach the appellant's objection, or in any manner tend to sustain the ruling complained of, for while it is no doubt true that if a party purchase property in good faith his title is not affected by any intent of his grantor, yet the intent of the grantor and grantee must both be ascertained, and it is not necessary that the fraudulent intent of both should be proven by the same transaction, but they may be proven by separate

transactions or circumstances, and when they are proven the case of fraud is made out. In this instance the testimony offered, if true, was the strongest kind of proof of the fraudulent intent of the grantor, and was a circumstance which the jury had a right to consider in judging of the honesty of the transaction. Suppose the defendant had been able to prove by the same, or some other, witness that he had a conversation with the purchaser and the purchaser had expressed a desire to assist his brother in defrauding his creditors, and the knowledge of that conversation could not be brought home to the vendor, or that any other circumstance could be proven showing a fraudulent intent on the part of the purchaser, certainly the jury would have a right to consider that circumstance, and from all the circumstances in the case they would determine whether or not there had been mutuality of intention to defraud. If they concluded that there had not, and that the intention was only on the part of the vendor, then they could invoke the principle argued by them that to render a sale fraudulent as to creditors of the vendor, there must be mutuality of participation in the fraudulent intent. But it cannot be invoked for the purpose of determining a fact. The fact must be first determined from the consideration of the circumstances, and then the principle applied. From the very necessities of the case, and from the fact that fraudulent intentions are always hidden, and that fraudulent motives are always concealed or attempted to be concealed, courts allow the widest possible latitude consistent with established rules of law in the investigation of causes wherein fraud is alleged; and the rules governing the introduction of testimony are necessarily relaxed.

In *Grimes v. Hill*, 15 Col. 359, it was held that while to invalidate a purchaser's title on the ground that the purchase was made in fraud of the right of creditors, it is necessary to prove a mutuality of intent to defraud be-

tween the vendor and vendee, yet that these two matters may be proved conjointly or separately by one witness or many, by direct or by circumstantial evidence. And that court held in common with all courts, that a wide range of evidence is necessary to show fraudulent intent as well as notice thereof in such transactions, and that a party attempting to impeach the validity of the conveyance on the ground of fraud may give in evidence declarations of the vendor or vendee tending to reveal the character of the transaction, and that circumstances, however slight, relating to the transaction, and tending to throw light upon its character, are competent evidence so far as the same are connected with the parties.

The identical question raised in this case was settled in the case of *Landecker v. Houghtaling*, 7 Cal. 392. In that case it was alleged that the court erred in allowing the defendant to prove by one Neville that before the sale to plaintiff, Hertzinger, the grantor, proposed to make a fraudulent sale of a portion of his property to witness, and the supreme court said:

"We think the testimony was properly admitted. To support allegation of the answer it was necessary to show a fraudulent design on the part of the vendor. It is true, that this of itself would be insufficient to vitiate a sale to an innocent purchaser without notice and for a valuable consideration; but the fraudulent intent of the grantor being established, the jury must determine from the circumstances of the case whether the purchaser participated in the fraud."

So in this case if the fraud of the vendor had been established, as it would have been pretty conclusively from the testimony offered, the jury would have a right to determine from all the circumstances whether the purchaser participated in the fraud. This doctrine was announced in *Bridge v. Eggleston*, 14 Mass. 245; 7 Am. Dec. 209, and in *Visher v. Webster*, 8 Cal. 109, where the decision of *Lan-*

*decker v. Houghtaling, supra,* was reaffirmed.   To the same effect is *Sloan v. Coburn,* 26 Neb. 607; *Woodruff v. White,* 25 Neb. 745.

But it is contended by the respondent that even if the court did err in refusing to allow the testimony offered, it was error without prejudice, as there was no testimony tending to show any guilty knowledge on the part of the plaintiff, or sufficient to put him upon inquiry.   We are not satisfied that the jury would not have found sufficient testimony to convince them of fraudulent collusion if they had been allowed to consider the clear proof that was offered of the fraudulent intent of the vendor to place his property beyond the reach of his creditors.   With the fraudulent intent of the vendor admitted, they might have been justified in being satisfied with slight testimony tending to connect the purchaser with the fraudulent intent. They would have a right to consider any of his acts which were inconsistent with a *bona fide* ownership of the property, and the record shows that some of his acts might reasonably be so interpreted.   As, for instance, it appears from the statement of facts that a safe which was a portion of the property transferred by the bill of sale from Pat O'Hare to Hugh O'Hare, was bid off at the sheriff's sale by Hugh O'Hare, the plaintiff.   That Pat O'Hare and Hugh O'Hare were brothers, and that Hugh O'Hare was in and around Pat O'Hare's place of business for a considerable time prior to the bill of sale having been executed. Each of these circumstances the jury had a right to take into consideration in connection with the circumstances tending to show the fraudulent attempt of Pat O'Hare to dispose of his property on the very day of the alleged sale to the plaintiff, and this court is not ready to say that the verdict of the jury could not have been sustained if it had found in favor of the defendant upon the testimony given and the testimony wrongfully excluded.   Hence we con-

clude that the error was not without prejudice, and that the judgment must be reversed, and the defendant given a new trial.

As to the second assignment of error, while we do not decide that it would be sufficient to reverse a judgment, yet the question was certainly incompetent and irrelevant, and if it had any effect at all, it would be to prejudice the jury, and should, therefore, not have been allowed.

For the reasons above assigned the judgment is reversed, and the cause remanded to the lower court with instructions to proceed in accordance with this opinion.

ANDERS, C. J., and STILES, SCOTT and HOYT, JJ., concur.