Argued 31 July; decided 25 August, 1902.

## BEERS v. AYLSWORTH.

[69 Pac. 1025.]

Fraudulent Transfer—Statements of Grantor.

1. In a garnishment proceeding, it being claimed that the transfer of property by the debtor to the garnishee was fraudulent, statements of the debtor concerning the transfer, made a few days before it, are admissible to show the debtor's intent, though not binding on the garnishee, having been made in his absence, unless he had knowledge of them.

Trial—Objection—Statement of Expected Answer.

2. Statement of counsel on the refusal of the court to allow witness to testify to conversation with H, who made a transfer of property to A, claimed to be fraudulent: "I wish to show that H made certain declarations * * concerning the assignment * * a few days prior to the transfer to A. In this proceeding we are obliged to show the fraudulency of the transaction, and one of the principal things we must prove is that H transferred this stock with fraudulent intent,"—sufficiently shows what was expected to be proved by the answer to allow a review of the ruling.

Fraudulent Conveyances—Evidence of Consideration.

3. Where the consideration for a conveyance is being inquired into, a wide latitude should be allowed in the examination of witnesses, for the purpose of determining the amount and value of the consideration alleged to have been paid, and, ordinarily, a mere statement of the debtor that he owed a certain sum will not be conclusive.

From Multnomah: Arthur L. Frazer, Judge.

Supplemental proceeding by Lusetta P. Beers against C. A. Aylsworth, resulting in an adverse judgment, from which plaintiff appeals.    Reversed.

For appellant there was a brief over the names of *Walde-mar Seton* and *Claude Strahan,* with an oral argument by *Mr. Strahan.*

For respondent there was a brief and an oral argument by *Mr. Henry H. Northup.*

MR. CHIEF JUSTICE MOORE delivered the opinion. ·

This is a proceeding to determine the liability of a garnishee. The transcript shows that the plaintiff, Lusetta P. Beers, having secured a judgment against one Robert Hanlin for the sum of $635.80, an execution was issued thereon, in pursuance of which a notice of garnishment was served upon C. A. Aylsworth, who, complying therewith, made a certificate to the effect that he did not have in his possession or under his control any debts, dues, moneys, rights, credits, or property belonging to Hanlin. This certificate being unsatisfactory to plaintiff, she filed written interrogatories and an affidavit in the nature of a complaint, averring that on September 2, 1899, Hanlin was the owner of 50 shares of stock in the Larch Mountain Investment Co., a corporation, on which day, and while her action against him was pending, without any consideration therefor, and with intent to hinder, delay, and defraud her, he made a pretended sale of his stock to one W. C. Aylsworth, who agreed to sell it for and to turn the proceeds thereof over to him, of which facts the garnishee at that time had knowledge; that on February 24, 1900, the day on which said notice was served, the garnishee, acting as the agent of Hanlin and W. C. Aylsworth, sold said stock, receiving therefor the sum of $500, which he held in trust for his principals; and that Hanlin is insolvent. The garnishee, having answered the written interrogatories and denied the material averments of the affidavit, alleged, as a separate defense, that, having paid the sum of $300, which was a valuable consideration, Hanlin assigned the stock to W. C. Aylsworth, garnishee's son, in trust for him; that on February 24, 1900, he caused said stock to be sold, receiving therefor, in excess of expenses,

.$44, which sum he had in his possession; and that neither Hanlin nor W. C. Aylsworth had any interest in said stock after September 2, 1899. The allegations of new matter in the answer having been put in issue by the reply, a trial was had resulting in a judgment for the garnishee, and plaintiff appeals.

1. It is contended by plaintiff's counsel that the court erred in refusing to permit B. F. Johnson to testify concerning a conversation he had with Hanlin prior to the assignment of his stock to W. C. Aylsworth. This witness, in answer to the question, "Did you ever have any conversation with Robert Hanlin, concerning the transfer of this stock, prior to September 2, 1899?" replied, "I did." He was then requested to state the conversation. An objection having been interposed on the ground that such declaration was not made in the presence of the garnishee, plaintiff's counsel stated to the court: "I wish to show that Mr. Hanlin made certain declarations and admissions, concerning the assignment of this stock, a few days prior to the transfer to Mr. Aylsworth. In this proceeding we are obliged to show the fraudulency of the transaction, and one of the principal things we must prove is that Mr. Hanlin transferred this stock with fraudulent intent. It is held by an overwhelming list of authorities that the evidence is competent for that purpose, to show the intent of the grantor. It is not sufficient to bind the grantee." The witness not having been permitted to detail Hanlin's alleged declaration as thus announced, an exception was saved. To render the statement sought to be proved admissible, it should have related to the subject-matter, and been so nearly contemporaneous with, but prior to, the transaction as to render the expression a part of the *res gestae*: *Robson* v. *Hamilton,* 41 Or. —— (69 Pac. 651). The stock was assigned September 2, 1899, and the question asked the witness was whether he had ever had any conversation with Hanlin upon that subject prior to that time. Plaintiff's action against Hanlin was instituted March 23, 1899, but when its cause arose we are unable to determine from an examination of the transcript. Any

declaration made by him concerning his stock prior to the time the said cause of action arose is immaterial. It will be observed that the question asked the witness does not connect the declaration sought to be imputed to Hanlin with his transfer of the stock, so as to make it part of the *res gestae,* but the statement of plaintiff's counsel limiting the expression to "a few days prior to the transfer to Mr. Aylsworth" would probably show that the transfer and the alleged declaration were sufficiently related to render them parts of the same transaction.

2. In *Kelley* v. *Highfield,* 15 Or. 277 (14 Pac. 744) it was held that, to render the action of the court in excluding testimony available, counsel should state what fact was expected to be elicited by an answer to the question. Counsel's announcement of what he expected to prove by an answer to the question is not very definite, but from the statement of the legal proposition, which is made a part of the bill of exceptions, the fact sought to be established is reasonably inferable, and sufficient, in our opinion, to present the question sought to be reviewed. It has been held, in suits instituted to set aside fraudulent conveyances, that evidence of the declarations of the vendor, made before the sale, and in the absence of the vendee, are admissible to show the fraudulent intent of the vendor, but they are not binding upon the vendee, unless it is proved that he had knowledge thereof: *Foster* v. *Hall,* 12 Pick. 89 (22 Am. Dec. 400); *Carver* v. *Barker,* 73 Hun, 416 (26 N. Y. Supp. 916); *O'Hare* v. *Duckworth,* 4 Wash. St. 470 (30 Pac. 724). Although the question propounded to the witness was not framed with much care, nor the statement of the testimony reasonably expected from him detailed with particularity, we nevertheless think he should have been permitted to answer the question, and that the court erred in rejecting such offer.

3. At the trial, W. C. Aylsworth, appearing as his father's witness, testified that he was conducting a store at Latourelle Falls, Oregon, for him; that whenever Hanlin wanted money he was authorized to take it from the store, and that he had

received therefrom about $350; that he derived his knowledge from an examination of the check and account books, which evidenced the receipt of $50 and $40, respectively, and from Hanlin's telling him he had taken the remainder. On cross-examination he was asked, "You do not know of your own knowledge where any of the money came from, except that you saw this check for $50 and this charge of $40 in the books?" The court, upon its own motion, interrupting plaintiff's counsel, said to him, in the presence of the jury: "It seems to me, Mr. Seton, that it is not very important whether he does or not. It won't throw any light on the case one way or the other. If Mr. Hanlin admitted that he took that money, and wanted to transfer this stock in payment of it, Mr. Aylsworth would not be required to investigate further to find out whether Hanlin was telling the truth in admitting that he got $350, accepting this statement of the witness as true. If a man is indebted to you, Mr. Seton, and you do not know just how much, you would be justified in taking his statement that he owed you a certain amount; at least that much you might be justified in believing he owed you, if he admitted it, especially if you see evidence of a considerable part of it. I think you have pursued this examination far enough. He would not be required, after Hanlin admitted he owed this money, and wanted to settle for it by transferring this stock, to say he saw Hanlin take this money. The examination has gone far enough on that point." An exception having been taken, it is contended by plaintiff's counsel that the court erred in its ruling. The issue to be tried was whether Hanlin sold his stock for a valuable consideration. The sum which he actually received was therefore material, as tending to establish the *bona fides* of the transaction. If the rights of his creditors had not been involved, he could probably have made such disposition of his property as would have pleased his fancy, but, the pleadings having admitted that he was insolvent, the plaintiff had a right to know where and how the sum of $350 was paid to him. Hanlin's admission, to the effect that, availing himself of the privilege granted by the

garnishee, he had taken from the latter's store, in addition
to the check and the sum charged to his account on the books,
the sum of $260, in payment of which he desired to transfer
his stock in the corporation,—such declaration, whether true
or false, would undoubtedly have been sufficient to warrant
the garnishee in accepting the stock, as intimated by the court,
unless the rights of his creditors were thereby prejudiced.
If Hanlin's admission that he had taken the sum of money
which he stated that he had received be sufficient evidence
of the consideration for the stock, it would necessarily follow
that every conveyance or transfer of property challenged for
fraud could be upheld if the vendor were willing to admit
that he had received an equivalent of the property in money
or goods, taken by him in pursuance of the purchaser's license,
but without his knowledge, though such admission was not
fortified by the sanctity of a judicial oath or strengthened
by a formal affidavit.

We do not wish to be understood as questioning the power
of the court to limit the cross-examination of a witness, which
is a matter largely within its own discretion, that will not be
reviewed on appeal, except for a manifest abuse thereof; but
where, as in this instance, the court, in the presence of the
jury, announces a rule that is not justified by law, the judg-
ment which followed, probably in consequence thereof, must
be reversed, and it is so ordered.                REVERSED.