### SCOTT *v.* MCMILLAN.

*(City Court of New York, Trial Term.* June, 1888.)

1. PARTY-WALLS—MUTUAL COVENANTS.
    Plaintiff and defendant entered into an agreement by which the former was to be allowed to make use of the lot of the defendant for the purpose of erecting a party-wall, and the latter, or her legal representatives, was to have the use of the party-wall on paying one-half the value thereof. It was also provided that the agreement should bind plaintiff in case the defendant should first build. *Held* that, as the contract was under seal, the mutual covenants furnished ample consideration for the defendant's promise, however small her interest in the land might be.

2. SAME—USE BY GRANTEE.
    The defendant having conveyed the land, the use of the wall by the grantee was a use by the defendant within the meaning of the covenant.

3. SAME—CONDITION PRECEDENT TO LIABILITY.
    Where such agreement provided that in case the parties were unable to agree as to the value of the wall, the matter would be submitted to arbitration, but the defendant declined to arbitrate, the liability of the defendant became fixed from the time of such refusal.

*J. F. Harrison,* for plaintiff.    *G. S. & J. H. Stitt,* for defendant.

MCADAM, C. J.   On the 15th day of October, 1871, the plaintiff, and the defendant, designated as "Margaret McMillan, administratrix," executed a contract in writing, under seal, reciting that the plaintiff was the owner of a lot on the north side of Forty-Third street, between Ninth and Tenth avenues, and that the defendant was the owner of the premises immediately adjoining on the westerly side thereof, as the same are divided by a line 200 feet east of the easterly side of Tenth avenue, and running parallel thereto from the northerly side of Forty-Third street aforesaid to the center line of the block between Forty-Third and Forty-Fourth streets. The contract further recites that the plaintiff was about to build a dwelling-house upon his lot, so that the westerly wall was to be a party-wall, and the parties agree that in building the said dwelling-house the plaintiff may make use of the lot of the defendant for the purpose of erecting a party-wall, 16 inches in width, so that the wall may stand equally on the land of each; and it is provided that the defendant, or her legal representatives, may use the said party-wall on paying one-half of the value thereof, to be agreed upon between them, and in case of inability to agree, each party is to appoint a practical builder or mason, and the two persons so selected are to appraise the value of the wall, and in case of their failure to agree, an umpire is to be called in to assist in determining the question of value aforesaid.   The contract also provides that, if the defendant shall first erect a dwelling-house on her lot, the provisions aforesaid are in all respects to apply to and bind the plaintiff.   The contract, therefore, contains mutual covenants.   It is signed by the defendant in her own name, without the suffix of the word "administratrix," which, for the purposes of the contract, must be regarded as *descriptio personæ* only, as she is personally liable to the plaintiff on the principles laid down in *Moran* v. *Risley,* 1 City Ct. R. 229, and *Ryan* v. *Rand,* 9 N. Y. St. Rep. 523.   If the defendant had first built the party-wall, the plaintiff would, under the contract, have been liable to the defendant in the same manner that the defendant is sought to be made liable to him.   The evidence shows that at the time of the execution of the contract the defendant had an estate of dower in the property which the contract declares belongs to her in fee; but this circumstance is of no consequence, as the contract is under seal, and the mutual covenants furnish ample consid-

eration for the defendant's promise, no matter how great or small her interest in the land amounted to. The defendant did not use the plaintiff's wall personally, but the grantee of the defendant's property did, by the authority of his grant, make use of it. An effort was made by the plaintiff to collect the one-half of the value of the wall from the grantee, but the court of appeals held that the grantee was not liable, on the ground that the obligation wa⸗ personal to the contracting parties. *Scott* v. *McMillan*, 76 N. Y. 141. The grant of the land, (in which the defendant joined,) in legal effect, authorized the use of the wall by the grantee, and as the defendant put it out of the power of the plaintiff to enjoin the use thereof by the grantee, the use by the latter is to be regarded, for legal purposes, as a use thereof by the defendant within the meaning and intent of the covenant. *Squires* v. *Pinkney*, 13 N. Y. St. Rep. 749. The grantee of the defendant used the party-wall in 1876, and but for the stipulation as to appraising the value of the wall the obligation to pay would have become fixed then. But the agreement to arbitrate was in the nature of a condition precedent to the fixing of the liability, and no cause of action could accrue until the award was made, (*Canal Co.* v. *Coal Co.*, 50 N. Y. 250; *Wangler* v. *Swift*, 90 N. Y. 38,) unless the failure to arbitrate was owing to the refusal of the defendant to proceed with the arbitration, (*U. S.* v. *Robeson*, 9 Pet. 319; Morse, Arb. 236; Benj. Sales, 1st Amer. Ed. §§ 575, 576;) the refusal to arbitrate being deemed equivalent to the unreasonable refusal of an architect to give a certificate of performance under a builder's contract, proof of which fact entitles the builder to a recovery without the certificate, (*Bank* v. *Mayor, etc.*, 63 N. Y. 336; *Nolan* v. *Whitney*, 88 N. Y. 648; *Whelen* v. *Boyd*, 114 Pa. St. 228, 6 Atl. Rep. 384.) and it has been held that where the defendant denies the general right of the plaintiff to recover anything, and does not merely question the amount of damages, he cannot insist upon the covenant to arbitrate the amount or value as a defense. *Lauman* v. *Young*, 31 Pa. St. 306. The witness Howe testified that on January 8, 1887, he called upon the defendant, told her he came on behalf of the plaintiff, and spoke of arbitrating in regard to the party-wall according to the agreement, and offered to arbitrate on behalf of the plaintiff, and the defendant said she would have nothing to do with it, and referred the witness to her son, John McMillan. He thereupon served the summons on her without a complaint. The defendant admits the service of the summons, but denies that she had any conversation as to arbitration. Howe is a disinterested witness, and his story is probable, for the reason that, according to the defendant's theory, she was not liable for the wall, and consequently would naturally decline to select arbitrators to determine what she was to pay, when, according to her understanding of her legal rights, she was under no obligation to pay anything. It is hardly probable that Howe invented this story, and deliberately testified to a falsehood. It is more reasonable to assume that the defendant has forgotten what occurred at the interview. The liability of the defendant became fixed on the day of this interview, January 8, 1887. Upon the evidence, I find that the wall was 16 inches thick up to the second story, and 12 inches thick above that portion of the building. Campbell, the plaintiff's witness, testified that the wall was worth $1,669.10, but this was on the mistaken theory that the wall was 16 inches thick up to the top of the building, so that this estimate of value cannot be accepted. Geagan, the defendant's witness, estimated the wall on the correct theory that it was only 12 inches thick above the second story, and he places the value at $1,029.92. For the reason stated, his estimate of value must be accepted. For one-half of this amount, to-wit, $514.96, the defendant is liable, with interest thereon from the time of the refusal to arbitrate as aforesaid, amounting to $43.75, aggregating $558.71. The party-wall agreement does not specifically state that the wall was to be 16 inches thick all the way up, and the parties appear to have accepted and used the wall without objection, and it is rather late now that

more than 16 years have elapsed, to claim that it was not technically as it should have been. *Smith* v. *Alker*, 102 N. Y. 87, 5 N. E. Rep. 791. The defendant is compelled to pay only for one-half of the wall she or her grantee took the benefit of, and that with interest only from the time of her refusal to arbitrate, the event that fixed her legal liability. It follows that the plaintiff is entitled to judgment for $558.71, with costs.