GEORGE L. KINGSLAND et al., Executors, etc., Respondents, *v.* CLARENCE TUCKER et al., Executors, etc., Appellants.

Three K.s and T. were adjoining lot owners in the city of New York; the K.s being about to build on their lot, the parties agreed that they should build a party-wall sixteen inches thick, half on each lot; that T. or his assigns might use the wall for the support of the beams of the building then standing on his lot, but when he or they should "make use of the same in the erection of any new building" he or they should pay to the K.s, or assigns, half of the value thereof at the time of so using it. Thereafter T.'s executors made application to the bureau of inspection of buildings to erect on said lot a building with walls twelve inches thick, which was denied for the reason that the proposed walls were not of the thickness required by law. Subsequently it was granted on condition that the executors should "line up" the party-wall. Said executors, however, finding that said wall had settled considerably and was out of plumb, did not "anchor" or "tie into" it, but erected an independent wall twelve inches in thickness, except in certain places, where the party-wall projected beyond eight inches on the T. lot, they built around such projection and made the new wall eight inches thick. It touched the party-wall in some places, in others it was several inches away from it. In an action brought upon the agreement to recover one-half the value of the party-wall, *held*, that plaintiffs could not recover; that the use contemplated by the agreement was the ordinary use to which party-walls are put, viz., that of resting the timbers of the building and the roof upon it, or of anchoring or tieing to it; that the incidental lateral support given by it did not constitute a use thereof within the meaning of the contract; that the fact the new wall was not of the width prescribed by the laws existing in New York city, had no bearing upon the nature of the use, or whether such use was within the meaning of the contract.

*Kingsland* v. *Tucker* (44 Hun, 91) reversed.

(Argued June 26, 1889; decided October 8, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made the first Monday of January, 1887, which reversed a judgment in favor of the defendants, entered upon the report of a referee, and granted a new trial.

This action was brought to recover one-half the value of a party-wall.

In 1867 George W. Tucker, defendant's testator, who owned a lot known as No. 12 White street, in the city of New York, entered into an agreement with Ambrose C. Kingsland, deceased, and with the plaintiffs herein, who were jointly the owners of the lot adjoining, known as No. 14, concerning the erection of a party-wall which was to be sixteen inches thick, one-half on each lot. Among other things, it was provided that Tucker, his heirs or assigns, might use the wall for the support of the beams of his building, then standing on his lot, but whenever it should be used in the erection of any new building to be constructed on said lot, he or they should pay to the adjoining owners one equal half of the value thereof at the time of using it. In 1883 defendants, Tucker's executors, made application to the bureau of inspection of buildings to erect on said lot a building sixty-six feet high, with walls twelve inches thick, which was denied on the ground that the proposed wall was not of the width required by law. Subsequently upon their agreement to "line up" the party-wall, viz., to so build the new wall that both walls should become practically one, their request was granted.

Upon examination it was found that the party-wall was out of plumb several inches in some places and had settled considerably. Defendants did not, therefore, "anchor" or "tie into" it, but erected an independent wall twelve inches in width, except in certain places where the party-wall projected beyond the width of eight inches on defendants' lot, they built around such projection and made the wall eight inches thick. The new wall touched the party-wall in some places, in others it was several inches away from it. The referee found that the defendants did not use the wall within the true meaning of the contract and dismissed the complaint. The General Term held that the lateral support which the new wall received from the party-wall at the places where the two structures came into contact contributed materially to the strength, stability and safety of the wall of defendants; that they did "make use of" the party-wall within the meaning of that phrase as used in the agreement.

*Sidney S. Harris* for appellants. The defendants' wall receives no lateral support from plaintiffs' wall. (*Fettrech* v. *Leamy*, 9 Bosw. 510 ; 1 Hoffman's Laws, 338, 339, §§ 12, 16, 471, 472, 475, 483 ; Goddard on Easements, 229 ; Washburn on Easements, chap. 4, § 1 ; *Dorrity* v. *Rapp*, 72 N. Y. 309.) Defendants did not use the party-wall. (*Fettrech* v. *Leamy*, 9 Bosw. 510 ; *Brown* v. *McKee*, 57 N. Y. 684 ; *Nash* v. *Kemp*, 49 How. Pr. 522.) The builder of the wall cannot recover unless he makes full use of the wall as a party wall. (*Van Syckel* v. *Tryon*, 6 Phil. 401 ; *Milner's Appeal*, 80 Pa. St. 54, 56 ; *Bertram* v. *Curtis*, 31 Ind. 46 ; *List* v. *Hornbeck*, 2 W. Va. 340 ; *Preiss* v. *Parker*, 67 Ala. 500 ; *Orman* v. *Day*, 5 Fla. 385 ; Washburn on Easements, 582.) Defendants are liable only in case they used the party-wall to support the building. (*Gilbert* v. *Woodruff*, 40 Ia. 320 ; *Irwin* v. *Peterson*, 35 La. Ann. 300.)

*Frederic de P. Foster* for respondents. The decision of the learned referee, reversed by the determination of the General Term, comes to this court for review upon both the facts and the law. (Code, § 1338 ; *Godfrey* v. *Moser*, 66 N. Y. 250.) Such use as was made of the party-wall constitutes in law a "use" of the party-wall. (*Auch* v. *Labouisse*, 20 La. Ann. 553 ; Civil Code of Louisiana, art. 675 ; *Greenwald* v. *Kappes*, 31 Ind. 216.)

PECKHAM, J. . The referee found that when the defendants erected their building the party-wall in question was examined by the builder employed by them, and was found to be out of plumb several inches in some places and to have settled considerably, and not to be in a proper or fit condition for use in the erection of defendants' building, and that it was not in a fit or proper condition to use as an easterly wall to the defendants' building, which they erected at that time. The referee also found that the defendants did not anchor or tie into the party-wall, but that they erected an independent wall twelve inches in width, which they used except where, in certain places, the party-wall projected beyond the width of eight

inches on defendants' lot, in which case the defendants built around such projection, and at such places their wall was eight inches instead of twelve inches in width. The referee further found that the wall of defendants touches the party-wall in some places and in other places it is several inches away from the party-wall, arising from the party-wall not being plumb.

The plaintiffs claim that such an use was made of the party-wall as was contemplated under the contract, and they base their claim upon the fact that by reason of its presence the defendants were enabled to build their wall of a less width than the bureau of inspection of buildings would otherwise have permitted, and hence they say that the party-wall was made use of by the defendants. The referee and the General Term differ as to the construction which should be given to the language of the agreement; the former holding that the defendants made no use of the party-wall within the true meaning of the contract, while the General Term was of the opinion that the facts made out such an use of the wall by the defendants as was within its terms. This opinion was based upon the assumption that the evidence showed that the lateral support which the new wall received from the party-wall at the various points and places where the two structures came into contact contributed materially to the strength, stability and safety of the wall of defendants, and hence that they did make use of the party-wall within the meaning of that phrase as employed in the contract.

I think the evidence fully sustains the finding of the referee that the party-wall was out of plumb; that it was not fit to tie or anchor to, and that it was not tied or anchored to by defendants, and that they erected an independent wall which, in some places, touched the party-wall, and in other places it was several inches away, because the party-wall was that much out of plumb.

Under these circumstances, we cannot agree that the defendants made use of the party-wall within the meaning of the

contract, even though the contact of the party-wall with the independent wall erected by the defendants, at the various points and places where the two structures came into contact, materially added to the strength, stability and safety of defendants' wall.

There is really no question but that the independent wall built by the defendants, as shown by the evidence, was sufficient in strength to stand alone, and to fill all the requirements of a wall for many years to come, and it is equally true that such a wall of but twelve inches in width is not permitted by the laws existing in New York city.

I do not see that this fact has any bearing upon the question of the nature of the use which was made of the party-wall by the defendants, or whether such use was within the terms of the contract. We think it plain that the use which is spoken of in the contract is the ordinary use to which a party-wall is put, viz., that of resting the timbers of the house upon or in it, and also the roof, or of "anchoring" or "tieing" to it in such a way as is commonly and ordinarily done in building on a party-wall. The incidental lateral support which may be given by a party-wall to a perfectly independent wall, which only touches it at different and distinct places, and where the independent wall is sufficient in and of itself to stand all the demands which may be made upon it for years to come, is not such an use of the party-wall as is ordinarily made, and, we think, clearly not within the terms of the contract in question.

We think the very wording of the agreement clearly calls for the use of the party-wall for the support of the beams of the defendants' building. They are, by the terms of the contract, permitted to use it for such purpose for the building then (at the time of the making of the agreement), standing on their lot, but whenever they make use of the same for the erection of a new building to be constructed on such lot, they are to pay for the one-half value of the wall. The use of the party-wall, which is contemplated to be paid for when the erection of any new building is spoken of in the agreement, is the same kind of use which is made of the party-wall gratuitously

as to the building then standing on the lot, viz. : An use for the support of the beams of any new building, or, at least, for anchoring or tieing to such wall. Nothing of the kind has been done in this case, and we think the General Term erred in reversing the judgment for defendants.

The order of the General Term should be reversed and the judgment entered upon the report of the referee should be affirmed, with costs to the defendants.

All concur.

Judgment affirmed.