(6 Misc. Rep. 349.)

### SEBALD v. MULHOLLAND.

(Superior Court of New York City, Equity Term. December, 1893.)

**1. PARTY WALLS—LIABILITY OF GRANTEE—COST.**

An agreement for a party wall provided that it should be used as such forever; that "whenever the said A., or his personal representatives, may desire to use said wall, he or they shall pay for the portion used;" and that the agreement should be construed as a covenant running with the land. *Held*, that the obligation to pay was personal, and did not bind a subsequent grantee of A., though the deed to such grantee recited that it was "subject to said agreement."

**2. EQUITY—LACHES.**

Equity will not compel the removal of an extension of a party wall, on the ground that it was a use of the party wall not contemplated by the agreement, where plaintiff made no objection until the extension was completed; but in such case he would be left to his remedy at law.

Action by Barbara Sebald against James Mulholland to enforce payment of a sum agreed to be paid for a party wall, and to have the same declared a lien on the premises of defendant, and to compel the removal of a projecting wall. Complaint dismissed.

Kurzman & Frankenheimer, for plaintiff.

E. W. Sheldon, for defendant.

McADAM, J. On November 17, 1871, Robert Auld owned the unimproved lot known as "No. 417 West Forty-Sixth Street," in this city, and Philip C. Agnew owned the unimproved lot adjoining, known as "No. 415." Auld contemplated building on his lot, and following the plan of the house No. 413, which had already been erected, two feet back from the building or street line, and subsequently did so. Auld entered into a written agreement with Agnew, November 17, 1871, which was recorded December 8, 1871. The agreement, after reciting the ownership by Auld of No. 417, and by Agnew of No. 415, and that Auld was about to build, and that it had been agreed that the dividing line between the two properties should be made a party wall, one-half thereof on each lot, declares that Auld and Agnew—

"Have agreed, and do hereby mutually covenant and agree, each with the other, and for their respective heirs, administrators, and assigns, that the said wall so to be constructed, shall be used and maintained as a party wall forever."

Then follow the specifications for the wall, which is to be 16 inches thick, 55 feet long, and not to extend nearer the street than the front wall of No. 413. The agreement then continues:

"And it is further agreed between the said parties that whenever the said Agnew, or his personal representatives, may desire to use said wall, he or they shall pay for the portion used."

It concluded with this provision:

"And it is further mutually * * * agreed * * * that this agreement shall be perpetual, and at all times construed as a covenant running with the land."

Subsequently, by various mesne conveyances, Auld's title to 417 became vested in the plaintiff, and Agnew's title to 415 became vested in the defendant, subject to said agreement. In 1892 the defendant built on 415, and used a portion of the party wall, the agreed value of which is $567.50. In building, the defendant extended his house out to the street line, (but on his own land,) and in consequence the front projects two feet beyond the frontage of the neighboring houses, Nos. 417 and 413. The suit is in equity (1) to charge upon the land of No. 415 a lien for the money due for the use of the party wall, as was done in Guentzer v. Juch, 51 Hun, 397, 4 N. Y. Supp. 39; and (2) to compel the removal of the two feet of the front which projects to the street line, or that the plaintiff be awarded, in lieu of that relief, a moneyed compensation for the consequential injury, agreeably to equitable principles. Amerman v. Deane, 132 N. Y. 355, 30 N. E. 741. The two counts will be separately considered.

The defendant challenges the right of the plaintiff to maintain any action on the first count, on the grounds (1) that, the party-wall agreement having been made by a remote grantor, and the covenant to pay being to him, it is a personal covenant, enforceable only by him or his personal representatives; (2) that the defendant is not liable, being a mere grantee, and not the person who made the promise to pay,—and cases are cited which sustain both objections: Cole v. Hughes, 54 N. Y. 444; Scott v. McMillan, 76 N. Y. 141; Id., (City Ct. N. Y.) 4 N. Y. Supp. 434; Kearr v. Sossan, 9 N. Y. St. Rep. 25; Joy v. Bank, 115 Mass. 60; Hart v. Lyon, 90 N. Y. 663; Squier v. Townshend, 2 City Ct. R. 142. The plaintiff claims that those cases are distinguishable from this, in that the agreement herein declares in express terms "that it is to be perpetual, and all times construed as a covenant running with the land." But such agreements are generally so regarded, and the insertion of such a declaration would seem to add no magical force to their meaning. In Hart v. Lyon, supra, the agreement contained a declaration in all respects similar to the one in question, but the court held that it did not take the case out of the operation of the rule established in Cole v. Hughes, and the other cases cited. The court went further, and reaffirmed the principle of those cases that—

"The right to compensation is personal to the builder, and does not pass by a grant of his land, nor does the agreement run with the land of the adjoining owner, so as to bind his subsequent grantees; and this is so, although the adjoining owner assumes to bind his grantees, and although one purchase of him with notice of the agreement."

The plaintiff relies upon Mott v. Oppenheimer, 135 N. Y. 312, 31 N. E. 1097, to sustain her right of action. That was where a bill had been filed to enjoin the grantee from using a party wall until

it was paid for, according to the stipulation of the parties, and the contract contained this significant provision:

"This agreement and the covenants therein contained shall apply to and bind the legal representatives of the several parties hereto, and shall be construed as covenants running with the land."

The court, after reaffirming the doctrine of the previous cases, said:

"But this agreement is dissimilar, in the respect that it was expressly agreed that the covenants of the agreement should run with the land."

And the decision proceeds entirely upon this distinction. It may, on first impression, seem that, if an agreement runs with the land, the covenants forming part of it must run likewise; but there is a dividing line which distinguishes between covenants real and personal, those that run with the land and those that do not; and this discriminating feature prominently appears in several of the cases before cited. It will be found that the courts have been careful to distinguish between a covenant personal and collateral in its character, and one attached to the land as such, and necessary to its enjoyment. The obligation to pay, and the right to enforce payment, have always been regarded as covenants of a personal or collateral character, that do not pass by grant, for they do not run with the land, nor are they necessary to its enjoyment, while the other provisions of the party-wall agreement generally do and are. The covenant to pay ceases for all time after payment, while the other covenants run with the land, and are perpetual. The agreement in Mott v. Oppenheimer, supra, went further than the contract here, for it declared that these "covenants," as well as the agreement, were to run with the land; and the court, on that account, gave effect to the intention of the parties, as expressed, by holding that they did run with the land, passed by grant, and bound the grantees of the parties. The distinction may seem refined, but it was necessary to effectuate the meaning and intention of the parties, as they had evidenced the same by their writing. The court did nothing more. So understood, the case of Mott v. Oppenheimer, supra, does not assist the plaintiff; and under the rule declared in Cole v. Hughes and other cases before cited, which is the principle that controls this case, she has no cause of action whatever under the first count of her bill. In Guentzer v. Juch, 51 Hun, 397, 4 N. Y. Supp. 39, also relied upon by the plaintiff, the bill was filed by the party who erected the party wall, whose right to compensation was undisputed. The right of a grantee to recovery did not arise, and was not, therefore, decided,—a feature which distinguishes that case from this. If the plaintiff is not entitled to recover the compensation claimed, (and such is the conclusion reached,) it would be a work of supererogation to examine the question whether the grantee of the adjoining lot, by assuming the party-wall agreement charged the land, so as to make it the primary fund for its payment. The first count must therefore be dismissed.

The second cause of action is one not addressed to the favor of a court of equity. The party wall was not extended beyond its

original dimensions. When within two feet of the street line, the defendant built an independent wall, entirely upon his own land, extending out to the building line. The plans were approved by the building department, so that, presumably, the erection made complies with all legal requirements, and is an unobjectionable structure. Agnew had, by the party-wall agreement, an election to allow the wall to stand on his land, and pay nothing, or to use it, and pay half its value. It was not an incumbrance on the land, but a benefit to it, (Hendricks v. Stark, 37 N. Y. 106, and see 4 Trans. App. 146;) and, when he sold the land, the benefit went with it, (Scott v. McMillan, [City Ct. N. Y.] 4 N. Y. Supp. 434.) His obligation to pay remained, and ripened into a present obligation to pay as soon as the person to whom he conveyed made the use of the wall contemplated by the agreement; and authorized by the very nature of the grant. If the defendant had chosen, therefore, to disregard the party-wall agreement, and had, in conformity with that intent, built an independent wall, entirely upon his own land, extending out to the street or building line, he would have offended no covenant and given rise to no cause of complaint. Kingsland v. Tucker, 115 N. Y. 574, 22 N. E. 268. There is no substantial difference between the case put and the one at bar, for the practical result would in either case be precisely the same. The plaintiff lays stress on the fact that the front extension must have been anchored to the party wall, or it could not stand, and her ground of action seemingly is that the defendant in that manner made an additional use of the wall, not warranted by the agreement. The additional burden is not of that substantial character which calls at this late day for the action of a court of equity to remove the additional burden, or award the plaintiff compensation for it. If she had asserted her rights soon after the erection was commenced, as in Baron v. Korn, 127 N. Y. 224, 27 N. E. 804, the court might have been disposed to consider more favorably the claim made now. It might, perhaps, have enjoined the prosecution of the work, or made some such equitable order as the rights and duties of the parties required; but the plaintiff remained silent until the alleged wrong was completed, and then brought suit. While there may be nothing in the conduct of the plaintiff arising to the dignity of an estoppel, (Galway v. Railway Co., 128 N. Y. 132, 28 N. E. 479; Welsh v. Taylor, 134 N. Y. 450, 457, 31 N. E. 896,) her acquiescence is sufficient to justify noninterference by equitable relief, where the remedy at law is adequate and more appropriate, by reason of laches, (Story, Eq. Jur. § 1535; McSorley v. Gomprecht;[1] Andrews v. Monilans, 8 Hun, 65.) For these reasons, the complaint as to the second count must be dismissed, but without prejudice to any action at law the plaintiff may elect to bring respecting the same, wherein her rights from a legal standpoint may be determined,—a duty not now incumbent on the court.

The counterclaim interposed by the defendant charging that the newel post of the plaintiff's stoop interferes with his premises is more imaginary than real. Adler v. Railroad Co., 138 N. Y. 173, 33

---

[1] See note at end of case.

N. E. 935. It is destitute of merit, and must be dismissed. No costs to either party as against the other.

NOTE.

The opinion in the case of Joanna McSorley against Benjamin Gomprecht and others, heard at an equity term of the superior court of New York city, was filed in June, 1892, and is as follows: "McADAM, J. The plaintiff and the defendants each own a lot and building thereon, on Columbus avenue, in the city of New York. The buildings stand four feet and six and a half inches apart, and the vacant space between the buildings is owned by the plaintiff. The building now owned by the defendants was built or commenced in 1890 by one Thomas A. McGowan; and on the 22d of January, 1891, before the building was finally completed, one of the defendants purchased the property at a foreclosure sale. When McGowan laid the foundation, and while building the wall on the north side along the line of the opening or vacant space, the plaintiff, as alleged in the complaint, complained to him that he was encroaching on her lot, and that he was building an inch or more over the line on her premises; but that her remonstrances were unheeded; and that, at the time the defendant purchased the property, he had full notice and knowledge of the encroachment; but that, notwithstanding that fact, he went on and completed the building. After the final completion of the building, the plaintiff brought this action for an injunction to compel the defendants to remove that strip of one inch of their building from her land. In seeking such equitable relief, it would have been more in accordance with equity to have brought the suit to restrain the erection or completion of the building, instead of waiting until the building was completed and in such a condition that the removal of the wall would cause a partial destruction of the building, and an expense greatly exceeding the value of the land in question, and then suing for its removal, 1 High, Inj. (2d Ed.) § 707. A court of equity does not lend its aid to a party who seeks inequitable relief, particularly where the plaintiff has another remedy. A suit in equity can only be sustained on equitable grounds. Marsh v. Benson, 19 How. Pr., at page 421, and cases cited. In this case the plaintiff has one or more legal remedies. She may sue for the trespass, (Argotsinger v. Vines, 82 N. Y. 308; Uline v. Railroad Co., 101 N. Y. 109–124, 4 N. E. 536;) or she may sue in ejectment. Actions of ejectment to recover strips of land less than the width of a brick have been brought and sustained, (Bowie v. Brahe, 4 Duer, 676;) but an injunction is an extreme remedy, which is not usually given when the plaintiff has a legal remedy, and never when he has a complete or adequate remedy at law, even if his rights have been infringed, (Marsh v. Benson, 19 How. Pr. 421; Thomp. Prov. Rem. 207, 208.) Besides, to entitle a plaintiff to relief by injunction, the injury must be real and substantial. Purdy v. Railway Co., (Com. Pl. N. Y.) 13 N. Y. Supp. 296, 297; Gray v. Railway Co., 128 N. Y. 500, 509, 28 N. E. 498. Although it cannot be said in this case that the injury is so trifling that the law will not take notice of it, yet, according to the only evidence on the subject, the value of this strip, one inch wide, is less than $100. Prior to 1862 a court of equity was not allowed to entertain a suit where the amount in controversy was less than $100. Marsh v. Benson, 19 How. Pr. 415; Laws 1862, c. 460, § 39. Now, the court, as a court of equity, can—that is, it has jurisdiction to—entertain a suit where the amount in controversy is less than $100; yet the reason for the former rule is not entirely removed by the repeal of the statute forbidding a court of equity to entertain suits where so little is involved. The decision of this case is not put upon any such ground; yet it is proper to consider the fact that the strip of one inch of land on the side of an open alley four feet and six and a half inches wide cannot seriously or materially interfere with the use of the alley, or the plaintiff's building on the other side of the alley. The case of Baron v. Korn, 127 N. Y. 224, 27 N. E. 804, on which the plaintiff relies, is clearly distinguishable from this. In that case the defendant did not plead as a defense that the plaintiff had an adequate remedy at law, whereas that defense is set up in this action. In that case the suit was

brought before the building was completed, to restrain the erection of the wall, and to compel the removal of the foundations laid. In this case the plaintiff waited until the building was completed, and then brought this suit to compel the builder or his grantee to take the wall down. In that case the alleyway was 35½ inches wide, just wide enough to enable the plaintiff, who was an importer and wholesale dealer in wine, to take his casks through; and the strip taken from that by the defendant was 9 inches wide, which wholly prevented the plaintiff from using the alley. Pages 226, 228, 127 N. Y., and pages 804, 805, 27 N. E. The injury in that case was substantial, and, but for the injunction, would have been irreparable. The case of Wheelock v. Noonan, 108 N. Y. 179, 15 N. E. 67, also relied upon by the plaintiff's counsel, and in which a mandatory injunction was granted, is clearly distinguishable from this in material respects. In that case the defendant did not plead that the plaintiff had a remedy at law, although the decision was not placed on that ground. It appeared there that the defendant had wrongfully covered the plaintiff's lot with a great quantity of large stones or boulders. The defendant had a parol license to occupy the land, which was subsequently revoked; but he refused to remove the stones, and the plaintiff had no adequate remedy, except a mandatory injunction. He could not bring ejectment, because the defendant had left, or was not in possession. He could not remove the stones, having nowhere to put them, and the court questioned his right to interfere with them; and, if he had a right of action for trespass, he could get only the rental value of the land, and be, in the mean time, deprived of the use of it, or opportunity to improve it. The one inch in this case the plaintiff could not improve by building on it, and whatever damage it is to plaintiff can be recovered by action or actions at law. To justify the granting of an injunction, the injury must not only be irreparable, (Troy & B. R. Co. v. Boston, H. T. & U. Ry. Co., 86 N. Y. 108, 126; Akrill v. Selden, 1 Barb. 316; Thomas v. Protective Union, 121 N. Y. 45, 52, 24 N. E. 24,) but the court must not thereby do irreparable injury to the other party; or, at least, the court, in the exercise of its discretion, should not grant an injunction where it would create a greater wrong than it is intended to remedy, (Gallatin v. Bank, 16 How. Pr. 253.) It seems to us that to grant a mandatory injunction in this case, compelling the defendant to take down the wall of a five-story brick building, because it encroached one inch over the line, when the line encroached upon is an open alley, would be causing great injury to the defendant, without any corresponding advantage or benefit to the plaintiff; and, as the plaintiff has other remedies or means of obtaining full compensation for all the injury she has sustained or may sustain, the court ought not, in the exercise of its discretion, to compel the taking down of the wall, and partial destruction of the building, by a mandatory injunction. It would, we think, be a violation of the rules and equitable principles by which courts of equity have always been governed. The plaintiff might properly have claimed alternative relief by asking for an injunction, unless the defendant would pay the value of the land encroached upon, and such damage as the taking or appropriation has caused her, and offering to release to the defendant the strip so covered by defendant's wall, on payment of such value and damages. In that case full and ample compensation could have been given her in this action, and she may yet so amend her complaint; but, if she does not elect to do so within 10 days, the complaint should be dismissed."