### YOUNG et ux. v. LINN MOTOR CO.

No. 2225.

Court of Civil Appeals of Texas. Beaumont.

Oct. 21, 1932.

Rehearing Denied Oct. 26, 1932.

A. W. Dycus and V. J. Wistner, both of Port Arthur, for appellants.

Fred A. White, of Port Arthur, for appellee.

### O'QUINN, J.

This suit grew out of a party wall contract. Linn Motor Company, a corporation, located and doing business in the city of Port Arthur, Jefferson county, Tex., owned lot 3, block 143, in said city, and Dr. T. W. Young and his wife, Mrs. T. W. Young, owned the adjoining lot 4, block 143, in said city. Linn Motor Company, desiring to erect a brick building upon its lot, and Dr. Young and wife contemplating building upon their lot at some time in the future, entered into the following contract for the building of a party wall on the dividing line of their lots, to wit:

"The State of Texas, County of Jefferson.

"This Agreement, made and entered into this 29th day of May, A. D. 1929, by and between Linn Motor Company, a corporation with its office and principal place of business located in Port Arthur, Jefferson County, Texas, herein called first party and Dr. T. W. Young and wife, Mrs. T. W. Young, each residing in the city of Port Arthur, Jefferson County, Texas, called second parties, witnesseth that:

"Whereas, the first party is the owner of Lot 3, Block 143 of the City of Port Arthur, Jefferson County, Texas, and the second parties are the owners of Lot 4, Block 143 of the city of Port Arthur, Jefferson County, Texas, which two lots are adjoining; and

"Whereas, the parties hereto desire to provide for the erection of a party wall on the dividing line between the said lots;

"Now, therefore, this agreement witnesseth that Linn Motor Company, first party, will construct a wall, the center line of said wall to coincide with the boundary line between said lots Number 3 and 4 in Block 143 of the City of Port Arthur, Texas, said wall to be two stories high, the first story thereof to be approximately seventeen (17) inches thick and to be constructed of brick and reinforced concrete, the second story of said wall to be approximately thirteen (13) inches thick and to be constructed of brick. Said wall shall have

a necessary and suitable foundation for its support. Said foundation may extend on either side of the boundary line between the two lots such distance as may be absolutely necessary for the support thereof not to exceed an extension of twelve (12) inches beyond the edge of said wall. Said wall may extend the full length of the boundary line between said lots.

"The costs of constructing the wall above described shall be paid by the first party and the second party hereto shall have the right to join on to, connect with and tie into said wall, or any portion thereof at any time they may see fit, upon payment to the first party of the sum of Twenty-three Hundred Thirty ($2330.-00) Dollars. Second parties have the right in joining on to said wall to cut into said wall for the purpose of tieing connecting walls thereto any reasonable depth not to exceed four inches.

"And the parties hereto covenant, for themselves and their respective successors, assigns, heirs and representatives, each to and with the other, its or their successors, assigns, representatives and heirs, to observe the above agreement, and the covenants herein contained shall run with the land; but no owner is to be responsible, except for its acts or defaults while owners. Should said wall, after the same becomes a joint wall, need repairs said repairs shall be made and each party pay its or their proportionate part of such repairs. It is further agreed by the parties hereto that this agreement shall be perpetual.

"In witness whereof, Linn Motor Company, first party, has caused this instrument to be executed by its Vice President, duly authorized, and Dr. T. W. Young and wife, Mrs. T. W. Young, in their own behalf have affixed their signatures hereto:

"This contract executed in duplicate on May 29, 1929.

"Linn Motor Company
"By [Signed] J. D. Hogan, V. Pres.
"First Party
"T. W. Young, Jr.
"Mrs. T. W. Young
"Second Parties
"Attest: [Signed] Glenn Bell, its Secretary"

This contract was duly acknowledged by all parties.

Under this contract, Linn Motor Company built the party wall. Later, August 31, 1929, Dr. Young and wife leased their lot to P. H. Inman for a period of seven years for the rental of $100 per month. Inman was a member of the Inman Chevrolet Company. This company was doing business and occupying a brick building on the lot adjoining lot 4 on the opposite side from the Linn Motor Company building. That left lot 4 between the two brick buildings, Linn Motor Company's on one side, and the one occupied by the Inman Chevrolet Company on the other. After leasing lot 4, Inman closed the ends by erecting a strong wire fence with a lift gate in front. He also erected a shed covering some 45 or 50 feet of the rear end of the lot. It was covered with corrugated iron roofing. The Inman Chevrolet Company used the lot for the storing and display of used cars. When this use commenced to be made of the lot, appellee, Linn Motor Company, demanded payment by Dr. Young of the agreed price of one-half of the party wall, $2,330. This Dr. Young refused, and Linn Motor Company brought this suit against Dr. Young and his wife, and P. H. Inman and Major Inman, to recover said sum.

Defendants Young answered by general demurrer, general denial, and specially denied that any building such as was contemplated by the parties in their party wall contract had been erected upon the property. The defendants Inman answered by general demurrer, general denial, and specially that the structure erected by them was exclusively upon lot 4, and at "some distance from the dividing line."

The case was tried to a jury. At the conclusion of the evidence, appellants moved for an instructed verdict, which motion was refused. The court then instructed the jury to return a verdict in favor of appellee Linn Motor Company against the defendants Dr. Young and his wife for the amount sued for, and in favor of the defendants P. H. Inman and Major Inman, which they did, and judgment was entered accordingly. Motion for a new trial was overruled, and Dr. Young and wife bring this appeal.

Appellants' first proposition urges that the court erred in refusing their motion for an instructed verdict. This is based upon the contention that the structure erected upon the lot and its use is not such building or use of the party wall as was contemplated by the parties in the party wall contract. The facts are without dispute. In addition to the facts stated above, the record discloses that the party wall was built half upon each lot. Inman put a concrete floor on lot 4 covering the entire lot up to the party wall. The shed built by Inman was not in any manner attached to or supported by the party wall. It was supported by steel or iron posts set in the concrete floor some 18 inches from the wall. The shed covered some 45 or 50 feet of the rear end of the lot and had corrugated iron roofing. The remainder of the lot was not covered but was entirely open—that is, had no roof. The ends of the lot were closed by heavy wire fencing, and there was a lift gate at the front. As above stated, Inman Chevrolet Company used the lot for storing and displaying used cars. The following pictures illustrate the nature and character of the structure Inman placed on the lot:

(a) Front view, showing no roof and the lift gate:

(b) Rear view, showing shed:

■ The party wall contract, set out supra, provides that the cost of constructing the party wall should be paid by the first party (Linn Motor Company) and the second party (Dr. Young) should have the right *to join onto, connect with, and tie into said wall* at any time he saw fit upon the payment to Linn Motor Company of the sum of $2,330, and that Dr. Young should have the right in joining onto the party wall, *to cut into said wall for the purpose of tying connecting walls thereto.* The controlling question is: Has Dr. Young made such use of the party wall as to render him liable to Linn Motor Company for one-half of its cost, $2,330, stated in the contract. We think it plain that the use of the party wall contemplated by the parties is the ordinary use to which a party wall is put, namely, that of resting the timbers or material of which the house is being built upon or in it, or tying to it, or otherwise supporting the building in such way as is commonly and ordinarily done in building on a party wall. It was evidently the contemplation of the parties that Dr. Young, at such time as he desired, was to build on his lot a permanent building and that same was to be joined onto and tied into the party wall—in other words, the party wall was to become an integral part of the building erected by Dr. Young, giving strength and support thereto. Under the undisputed facts no such building has been erected. The lease contract between Young and Inman provides that Inman shall have the right at the end of his lease period to remove any improvement he might place on the lot. The structure erected by Inman was intended to be and is temporary. Under the contract, liability for contribution for the walls of the party wall would not mature until the owner of lot 4 appropriated the use of the party wall for the purpose and as a part of a building erected in accordance with and in pursuance of the contract. The structure erected by Inman and its use is not such building or such use of the party wall as would entitle appellee to judgment for half the cost of the wall. 47 C. J. § 61, p. 1351 (and authorities cited under same); 20 R. C. L. § 23, pp. 1099, 1100; 22 A. & E. Ency. Law (2d) 251.

■ But appellee contends that because the wall incloses one side of the lot, that is, incloses one side of the shed or structure erected and used by Inman under his lease of the lot, that this is in accord with the terms of the party wall contract and is such use of the party wall as renders appellants liable for half of the cost of the wall. We do not think

so. We have just held that the building of the shed by Inman was not such building, in relation to the party wall contract, as rendered Dr. Young liable for half of the cost of the wall. Likewise, that the use of the wall in the manner shown is incidental only, slight and temporary in character, and not such as to make the owner of lot 4 liable for contribution to the cost of the wall. The utilization intended is such as to make the wall a part of some permanent structure. Moreover, Linn Motor Company, appellee, is the owner of the party wall in its entirety until it receives pay for half of the cost of same from the adjacent owner of lot 4. That being true, it is in the attitude of having built the party wall on its own lot and users of the adjacent lot having inclosed three sides, the wall making the fourth or completing inclosure. In this situation, it seems to be well settled that the owner of a town or city lot is not liable to the owner of an adjacent wall when he merely avails himself of it as a part of the inclosure of his premises. Nolan v. Mendere, 77 Tex. 565, 14 S. W. 167; 19 Am. St. Rep. 801; Conner v. Joy (Tex. Civ. App.) 150 S. W. 485; Kingsland v. Tucker, 115 N. Y. 574, 22 N. E. 268; Sheldon Bank v. Royce, 84 Iowa, 288, 50 N. W. 986. Numerous other cases so holding could be cited. No possession is taken or control exercised over the wall, and hence no appropriation of same. Its use by Inman is only incidental. The very terms of the party wall contract provide for the erection by Dr. Young on his lot of a permanent and substantial building that would be *joined onto, attached, and tied into the party wall,* thereby making the wall the part of an actual building, and it was contemplated that it would be necessary in the erection of such building and in joining onto and tying into same to cut into said wall for the attaching to and resting on and in said wall of timbers or metal material necessary for the construction of said building. It is too plain for discussion, we think, that the fence and shed erected by Inman in no way came within the intention or terms of the party wall contract. The motion of appellants for an instructed verdict should have been given.

The provisions of the party wall contract being plain and unambiguous, and the evidence without dispute, from what we have said it follows that the judgment of the trial court should be reversed and judgment here rendered for appellants, which is accordingly done.

Reversed and rendered.